JAMES R. CREECH, Plaintiff v. RANMAR PROPERTIES, A North Carolina General Partnership, MARY HOBBS and RANDAL HOBBS, Defendants

No. COA00-950

(Filed 4 September 2001)

**Landlord and Tenant— lease agreement—termination—option to purchase**

> The trial court erred in an action for breach and/or anticipatory breach of contract, unjust enrichment, and unfair and deceptive trade practices by concluding as a matter of law that defendants had properly terminated the parties' lease agreement based on plaintiff's failure to pay the 1996 real property taxes in a timely manner and that plaintiff could no longer exercise the option to purchase provided in the agreement, because: (1) the lease contains no provision for termination of the lease upon the occurrence of any breach; (2) the lease does not indicate that the parties clearly intended for plaintiff's obligation to pay taxes to be regarded as part of plaintiff's rental obligation, and thus plaintiff's covenant to pay taxes was not "rent" within the meaning of N.C.G.S. § 42-3; and (3) N.C.G.S. § 42-27, which causes a tenant to forfeit his right of possession for neglecting or refusing to perform the terms of the contract, does not apply since the lease was entered into on 12 March 1996, the property that is the subject of the lease is located in New Hanover County, and New Hanover County was added to the statute after the date the lease was entered.

Appeal by plaintiff from judgment entered 7 January 2000 and amended 17 February 2000 by Judge W. Allen Cobb in New Hanover County Superior Court. Heard in the Court of Appeals 6 June 2001.

*Ryals, Robinson & Saffo, P.C., by Mark F. Carter, for plaintiff-appellant.*

*Stephen E. Culbreth for defendant-appellees.*

CAMPBELL, Judge.

On 12 March 1996 plaintiff-tenant ("plaintiff") entered into a lease agreement ("the lease") with defendants-landlord ("defendants") whereby plaintiff agreed to lease the property located at 1209 Market Street, Wilmington, North Carolina, for a term beginning 1 February

1996 and ending 1 September 2005. Plaintiff agreed to pay rent at the rate of $1600 per month from 1 July 1996 through 31 December 1996, and $2000 per month for the remainder of the lease term. In addition to the obligation to pay monthly rent, the lease held plaintiff responsible for payment of all real and personal property taxes assessed against the property, as well as property insurance. Further, the lease granted plaintiff an option to purchase the property, which could be exercised by giving defendants sixty-days written notice.

On 13 January 1998, defendants' attorney sent plaintiff a letter purporting to terminate the lease for plaintiff's failure to pay the 1996 real property taxes ("1996 taxes") and the property insurance premiums in a timely manner. In addition, defendants' attorney sent plaintiff a new lease agreement for him to execute. At this time, plaintiff was current on his rent and insurance payments, but had not yet paid any of the 1996 taxes. The parties were in dispute as to the amount of plaintiff's liability for the 1996 taxes, which plaintiff expected to be prorated between him and defendants. Plaintiff refused to sign the new lease agreement and continued paying rent. On 25 March 1998, plaintiff sent defendants a check for the full amount of the 1996 taxes plus interest. On 20 April 1998, defendants' attorney again wrote plaintiff contending that the lease was void and demanding that he surrender the premises by 31 May 1998 or execute the previously proposed new lease, which had a higher monthly rent and did not include an option to purchase. In response, by letter dated 24 April 1998, plaintiff notified defendants that he was exercising the option to purchase contained in the lease, and that he was ready, willing and able to close the transaction on 24 June 1998. However, defendants refused to convey the property to plaintiff.

On 16 June 1998, plaintiff brought this action in New Hanover County Superior Court, alleging breach and/or anticipatory breach of contract, unjust enrichment (for the value of improvements plaintiff had allegedly made to the property) and unfair and deceptive trade practices. Plaintiff also sought specific performance of the option to purchase, as well as a preliminary injunction ordering defendants to immediately convey the property to plaintiff. In addition, plaintiff filed a notice of lis pendens as to the property. Defendants filed their answer on 20 July 1998, along with a counterclaim seeking removal of the cloud on title allegedly created by plaintiff's earlier recording of the lease, together with his written notification to defendants that he was exercising the option to purchase. On 31 July 1998, plaintiff filed a notice of cancellation of the lis pendens when the parties agreed to

CREECH v. RANMAR PROPS.

[146 N.C. App. 97 (2001)]

sell the property to a third party and place the proceeds of the sale in an escrow account. After a bench trial, the trial court made detailed findings of fact and concluded, as a matter of law, that defendants were justified in declaring the lease to be void, and that plaintiff had no rights under the lease. On 19 January 2000, plaintiff filed a motion to amend the judgment pursuant to N.C. R. Civ. P. 52(b) ("Rule 52(b)").[1] On 17 February 2000, the trial court entered an amended judgment, again concluding, as a matter of law, that "the defendants were justified in declaring the lease contract to be void," that "the plaintiff has no rights under the lease" and that "the option [is] not binding on the defendants." Based on its conclusions of law, the trial court ordered that plaintiff recover nothing on his first, third, fifth and sixth causes of action, and that defendants were entitled to the proceeds from the sale of the property, which were being held in escrow. The court's amended judgment further provided that "this is a final judgment as to the Plaintiff's First, Third, Fifth and Sixth Causes of Action and there is no just reason for delay in entering this order" pursuant to N.C. R. Civ. P. 54(b) ("Rule 54(b)"). Plaintiff appeals, arguing that the trial court's conclusions of law are not supported by its findings of fact, and that the trial court failed to make conclusions of law as to plaintiff's claims of waiver and estoppel.

We first note that plaintiff appeals from an interlocutory order, as the trial court's judgment fails to resolve plaintiff's second and fourth causes of action, and defendants' counterclaim. *See Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 344, 511 S.E.2d 309, 311 (1999) ("Where, as here, an order entered by the trial court does not dispose of the entire controversy between all parties, it is interlocutory."). "As a general rule, a party is not entitled to immediately appeal an interlocutory order." *Id.* However, where the order represents a final judgment as to one or more but fewer than all of the claims presented in an action, an immediate appeal may be had if the trial court certifies that there is "no just reason for delay" in entering final judgment as to those claims. N.C.R. Civ. P. 54(b) (1999). In the instant case, the trial court's judgment operates as a final judgment as

1. It appears from the record that plaintiff's motion under Rule 52(b) was not filed within ten days of entry of the judgment, which occurred on 7 January 2000, thereby making plaintiff's notice of appeal, filed 16 March 2000, untimely. *See* N.C. R. App. P. 3(c)(2) (30-day time period for giving notice of appeal is tolled by filing of a *timely* motion under Rule 52(b)). However, the record does not indicate that defendants objected to plaintiff's Rule 52(b) motion to amend. Further, the motion was granted by the trial court. Therefore, we choose to exercise our discretionary authority pursuant to N.C. R. App. P. 21(a)(1) and review the merits of this appeal by certiorari. *See Anderson v. Hollifield*, 345 N.C. 480, 480 S.E.2d 661 (1997).

to plaintiff's first, third, fifth and sixth causes of action, and it contains the trial court's certification pursuant to Rule 54(b). Therefore, plaintiff's appeal is properly before us.

By his first three assignments of error, plaintiff argues that the trial court committed reversible error in concluding as a matter of law that defendants had validly terminated the lease and that plaintiff had no right to exercise the option to purchase. We agree, and hold that the trial court's findings of fact do not support its conclusions of law.

When the trial court sits as a fact-finder, its findings of fact are conclusive on appeal if supported by competent evidence, even if there is evidence which would support alternative findings. *K&S Enters. v. Kennedy Office Supply Co.*, 135 N.C. App. 260, 264, 520 S.E.2d 122, 125 (1999), *aff'd*, 351 N.C. 470, 527 S.E.2d 644 (2000). Here, plaintiff only challenges the trial court's conclusions of law. Where no exceptions are taken to findings of fact, such findings are binding on appeal. *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962). What remains for us to determine is whether the trial court's conclusions of law are supported by its findings of fact. Conclusions of law are entirely reviewable on appeal. *Scott v. Scott*, 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994).

" 'An option in a lease, which gives the lessee the right to purchase the leased premises at any time before the expiration of the lease, is a continuing offer to sell on the terms set forth in the option, and may not be withdrawn by the lessor within the time limited. The lease is a sufficient consideration to support specific performance of the option to purchase granted therein.' " *Reynolds v. Earley*, 241 N.C. 521, 526, 85 S.E.2d 904, 907-08 (1955) (quoting *Crotts v. Thomas*, 226 N.C. 385, 387, 38 S.E.2d 158, 159 (1946)). It follows from this rule that termination of the lease terminates the option to purchase, but, where the lease is still in effect, the option to purchase is still valid. Indeed, the lease in the instant case indicates that the option is valid "during the term of the lease." Thus, we must determine whether the lease was still valid when plaintiff attempted to exercise his option to purchase by letter dated 24 April 1998.

Absent an express provision for termination or forfeiture of a lease, a breach of a covenant in a lease does not terminate the lease. *Morris v. Austraw*, 269 N.C. 218, 222, 152 S.E.2d 155, 159 (1967); *Couch v. ADC Realty Corp.*, 48 N.C. App. 108, 113, 268 S.E.2d 237, 241 (1980). Here, the lease in question contains no provision for ter-

mination of the lease upon the occurrence of any breach. However, N.C. Gen. Stat. § 42-3 provides that in all leases with a fixed time for the payment of rent,

> there shall be implied a forfeiture of the term upon failure to pay the rent within 10 days after a demand is made by the lessor or his agent on said lessee for all past-due rent, and the lessor may forthwith enter and dispossess the tenant without having declared such forfeiture or reserved the right of reentry in the lease.

N.C. Gen. Stat. § 42-3 (1999).

Either the letter dated 13 January 1998 or the letter dated 20 April 1998 from defendants' attorney to plaintiff could be considered a demand for past-due rent under N.C.G.S. § 42-3, but the question remains as to whether plaintiff in fact owed past-due rent at the time these payment demands were made. The trial court found as fact that "[a]t the time of the [13 January 1998] notification, plaintiff was current on his rent and insurance but had not yet paid 1996 taxes on the property." Therefore, the dispositive issue is whether plaintiff's responsibility to pay taxes was part of his rental obligation, or a separate covenant between the parties.

As a general rule, a tenant's covenant to pay taxes is not the same as a covenant to pay rent, and such taxes are not regarded as part of the rent in the absence of a clear intention of the parties to that effect expressed in the lease. 49 Am. Jur. 2d *Landlord and Tenant* § 452 (1995). Whether taxes are part of the rental depends on the contract between the parties and its construction. *Id.* In the instant case, the lease identifies the monthly payment as "monthly rental," while insurance payments are identified as "additional rental." In regards to the payment of taxes, Section 5 of the lease reads as follows:

> lessee shall be liable for payment of all real and personal property taxes assessed against the property, payment for all repairs and alterations to the property or the buildings on the property, and payment for all utility services used in the operation of its business on the premises.

Unlike the provision of the lease identifying insurance as "additional rental," Section 5 does not indicate that the parties clearly intended for plaintiff's obligation to pay taxes to be regarded as part of plaintiff's rental obligation. Absent such clear intention, we believe the parties intended for plaintiff's obligation to pay taxes to be consid-

ered a separate covenant. Therefore, we conclude that plaintiff's covenant to pay taxes was not "rent" within the meaning of N.C.G.S. § 42-3, and, thus, defendants cannot rely on the statute as a basis for terminating plaintiff's lease. Further, since the lease lacked an express provision for termination upon breach of a covenant, defendants had no legal authority to cause plaintiff to forfeit his rights under the lease. Consequently, the lease was still valid on 24 April 1998, and plaintiff's notification to defendants that he was exercising the option to purchase was valid.

Defendants contend that the lease is also governed by N.C. Gen. Stat. § 42-27, which causes a tenant to forfeit his right of possession for "neglect[ing] or refus[ing] to perform the terms of his contract [for the rental of land] without just cause. . . ." N.C. Gen. Stat. § 42-27 (1999). N.C.G.S. § 42-27 applies only to those counties specifically listed in that section. New Hanover County was added to N.C.G.S. § 42-27 by 1995 N.C. Sess. Laws ch. 566, which was ratified on 19 June 1996. N.C. Sess. Laws ch. 566, § 3 provides that "[t]his act is effective upon ratification and applies to contracts entered into on or after that date." 1995 N.C. Sess. Laws ch. 566, § 3. While the property that is the subject of the lease is located in New Hanover County, the lease was entered into on 12 March 1996, and thus N.C.G.S. § 42-27 does not apply.

Having found in favor of plaintiff on his first three assignments of error, we need not address his remaining assignments of error.

Based on the foregoing, we hold that the trial court erred in concluding as a matter of law that defendants had properly terminated the lease and that plaintiff could no longer exercise the option to purchase. Therefore, the trial court's judgment is reversed, and the cause is remanded to the trial court with instructions to enter judgment in favor of plaintiff in his action for specific performance, and order disbursement of the funds being held in escrow in a manner consistent with this opinion and the escrow agreement.

Reversed and remanded.

Judges WYNN and BIGGS concur.