JOHN D. OLIVER, OHR BUILDING, INC., AND GLENDA FAYE MOTSINGER OLIVER, PLAINTIFFS v. ZACHARY T. BYNUM, III, BYNUM & MURPHREY, PLLC, MTNJ CONSTRUCTION COMPANY, INC. AND M.T.N.J. DEVELOPMENT COMPANY, INC., DEFENDANTS AND COUNTERCLAIM PLAINTIFFS v. RANDOLPH M. JAMES AND PAUL FREER, COUNTERCLAIM DEFENDANTS

No. COA03-6

(Filed 2 March 2004)

**Attorneys— disqualification as counsel—conflict of interest— champerty and maintenance**

There was no abuse of discretion in the court's disqualification of James as plaintiffs' counsel where evidence of civil conspiracy and champerty and maintenance supported the conclusion that James had a conflict of interest.

Appeal by plaintiffs and counterclaim defendant Randolph M. James from order entered 2 October 2002 by Judge William Z. Wood, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 8 October 2003.

*Randolph M. James, P.C., by Randolph M. James, and Bell, Davis & Pitt, P.A., by Stephen M. Russell, for plaintiffs and counterclaim defendant Randolph M. James appellants.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Maria C. Papoulias, and Bennett, Guthrie & Dean, PLLC, by Richard V. Bennett, for defendant appellees.*

TIMMONS-GOODSON, Judge.

John D. Oliver ("Oliver"), OHR Building, Inc., and Glenda Faye Motsinger Oliver (collectively as "plaintiffs"), and Randolph M. James ("James") appeal from an order of the trial court granting the dis-

qualification of James as plaintiffs' counsel. For the reasons stated herein, we affirm the order of the trial court.

The pertinent facts of the instant appeal are as follows: Defendant Zachary T. Bynum, III ("Bynum") and James are both attorneys in Winston-Salem, North Carolina. James represented Paul Freer ("Freer") in a real estate venture in which Freer became a business partner with Bynum. Thereafter, James approached Bynum about merging their legal practices. Bynum declined.

Freer and his wife own P.F. Plumbing Contractors, Inc., a plumbing business that provided services for Bynum and Watson Development Company ("Bynum and Watson Dev."), a real estate development company. James represented Freer in an action against Bynum and Watson Dev., which resulted in a settlement agreement. The settlement provided that Bynum would personally guarantee a partial payment of Bynum and Watson Dev.'s debt to Freer. The personal guarantee is secured by a deed of trust wherein Bynum is the grantor, P.F. Plumbing Contractors, Inc., is the beneficiary, and James is the trustee. Bynum alleges that James gained access to Bynum's confidential financial records as a result of his representation of Freer in this matter.

The record is clear that there is animosity between these two lawyers. Bynum alleges that James defaulted on a referral fee arising from a fee-splitting arrangement. Around the same time, James's sole associate left James to work for Bynum.

At the end of 2001, James represented Freer in an action against Oliver, who was represented by Bynum. The record is unclear as to whether this suit was ever settled. In late 2001, Oliver was unhappy with Bynum's representation of him. Oliver contacted Freer for a lawyer referral. Freer recommended James.

Before the end of 2001, Oliver audiotaped a conversation between himself and Bynum. At the time of the conversation, Bynum believed that he still represented Oliver. Oliver delivered the tapes to James. Although James denies that he directed Oliver to tape these conversations, James's paralegal, Susan Gray ("Gray"), testified that James told her that he requested that Freer direct Oliver to tape his conversations with Bynum.

Oliver expressed concern that he would be unable to finance his suit against Bynum. Freer offered to finance the litigation. James's paralegal testified about the contents of the fee agreements between

James, Freer, and plaintiffs. Plaintiffs and James entered into a contingency fee agreement while Freer and James created a part contingency, part hourly agreement wherein Freer agreed to finance the litigation up to $40,000. If the suit was successful, Freer would recoup the money he spent and would be entitled to part of the proceeds after attorney's fees and costs were paid.

James filed plaintiffs' complaint against Bynum on 27 December 2001, alleging breach of fiduciary duty, negligence, fraud, and negligent infliction of emotional distress. Bynum, Bynum & Murphrey, PLLC, MTNJ Construction Company, Inc. and M.T.N.J. Development Company, Inc. (collectively as "defendants") counterclaimed that plaintiffs conspired with Freer and James to defraud them. Defendants then motioned the trial court to disqualify James as plaintiffs' counsel. In granting defendants' motion to disqualify James, the trial court entered the following findings of fact:

1.　Defendants and counterclaim plaintiffs have offered evidence and asserted claims and affirmative defenses in their responsive pleading alleging that counterclaim defendant James ("James") engaged in a civil conspiracy, champerty and maintenance. In addition to the testimony offered, the court reviewed and considered a written agreement between James and counterclaim defendant Paul Freer ("Freer"), a stranger to this litigation, in which Freer agreed to finance the prosecution of plaintiff's claims in the above lawsuit up to the sum of $40,000, with provision for reimbursement and participation in any recovery on their behalf.

2.　Defendants and counterclaim plaintiffs have offered evidence and asserted claims and affirmative defenses in their responsive pleading alleging that James represented Freer in a dispute with defendant Bynum ("Bynum") which resulted in a settlement in August 2001, in which James served as trustee under a deed of trust securing performance under the agreement. The alleged breach of this agreement is also the subject of a claim by Bynum against Freer in this lawsuit. As part of this settlement, James and Freer obtained confidential financial information from Bynum which he contends they intend to use in the current lawsuit. Subsequent to the above settlement, James continued to represent Freer's interest in a claim against plaintiff OHR Building, Inc. while at the same time representing plaintiffs in the preparation of their claims in this lawsuit.

3. Counterclaim defendant James will be a material fact witness in this lawsuit because of his involvement in the above transactions and representations of multiple parties.

Based on the foregoing findings of fact, the court made the following conclusions of law:

1. James's representation of multiple parties and his involvement in this litigation as a party creates a conflict of interest in violation of Rules 1.7(b) and 1.9(a) of the North Carolina Rules of Professional Conduct.

2. James is a material witness in this litigation, which creates a further conflict of interest in his representation of plaintiffs.

3. Defendants and counterclaim plaintiffs have made a colorable showing at this stage of the litigation that James has engaged in the conduct alleged in their affirmative defenses and counterclaims.

---

Plaintiff and James assert that the trial court abused its discretion by granting defendants' motion to disqualify plaintiffs' counsel based on findings of fact not supported by competent evidence and conclusions of law not supported by the findings of fact. For the reasons stated herein, we disagree.

"Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal." *Travco Hotels v. Piedmont Natural Gas Co.*, 332 N.C. 288, 295, 420 S.E.2d 426, 430 (1992), *citing In re Lee*, 85 N.C. App. 302, 310, 354 S.E.2d 759, 764-65, *disc. rev. denied*, 320 N.C. 513, 358 S.E.2d 520 (1987). An appellate court may reverse a trial court under an abuse of discretion standard "only upon a showing that its actions are manifestly unsupported by reason." *Dockery v. Hocutt*, 357 N.C. 210, 215, 581 S.E.2d 431, 435 (2003) (citations omitted).

The standard of review for findings made by a trial court sitting without a jury is "whether any competent evidence exists in the record" to support said findings. *Hollerbach v. Hollerbach*, 90 N.C. App. 384, 387, 368 S.E.2d 413, 415 (1988). Findings of fact and conclusions of law "allow meaningful review by the appellate courts." *O'Neill v. Southern Nat. Bank*, 40 N.C. App. 227, 231, 252 S.E.2d 231, 234 (1979). Findings of fact are conclusive if supported by competent evidence, irrespective of evidence to the contrary. *Associates, Inc. v.*

*Myerly and Equipment Co. v. Myerly*, 29 N.C. App. 85, 89, 223 S.E.2d 545, 548 (1976).

Plaintiffs and James assert that the trial court erred when it found as fact that James engaged in civil conspiracy, champerty and maintenance and that he obtained confidential financial information from Bynum during his representation of Freer. We disagree.

A successful civil conspiracy claim requires the moving party to evidence an agreement of two or more parties to carry out unlawful conduct and injury resulting from that agreement. *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002). Gray testified that upon questioning James regarding his arrangement with Freer and Oliver, James stated that "he and Paul Freer were teaming up to do whatever it took to strip Zack Bynum of his law license. He further stated that this would probably push Mr. Bynum into bankruptcy." Gray's testimony provides competent evidence to support the trial court's finding of fact that James engaged in a civil conspiracy.

The terms "maintenance" and "champerty" have been defined as follows:

"Maintenance" [is] an officious intermeddling in a suit, which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it. "Champerty" is a form of maintenance whereby a stranger makes a bargain with a plaintiff or defendant to divide the land or other matter sued for between them if they prevail at law, whereupon the champertor is to carry on the party's suit at his own expense. The Supreme Court . . . noted that many exceptions to the principles of champerty and maintenance have been recognized and that it has come to be generally accepted that an agreement will not be held to be within the condemnation of the principles unless the interference is clearly officious and for the purpose of stirring up strife and continuing litigation.

*Wright v. Commercial Union Ins. Co.*, 63 N.C. App. 465, 469, 305 S.E.2d 190, 192 (1983) (citations omitted). Freer offered to financially support Oliver's lawsuit against Bynum even though Oliver still owed him $10,000 from a previous lawsuit. Gray testified that James "instructed Mr. Freer and/or Mr. Oliver to obtain taped conversations from meetings with Mr. Bynum" and that James intended to destroy Bynum's legal career. Although James did not personally finance the lawsuit, there is evidence on the record that he facilitated the financ-

ing through Freer "for the purpose of 'stirring up strife and continuing litigation.' " *See Wright*, 63 N.C. App. at 469, 305 S.E.2d at 192, *quoting 5 Lawson on Rights and Remedies, § 2400*. Thus, there is competent evidence in the record that James engaged in champerty and maintenance. *Id.*

Plaintiffs and James further argue that the findings of fact do not support the conclusions of law. The trial court concluded as a matter of law that (1) James's "representation of multiple parties and his involvement in this litigation as a party creates a conflict of interest;" (2) James is a material witness in this litigation, creating another conflict of interest; and, (3) defendants have made a colorable showing that James has engaged in the conduct alluded to in their affirmative defenses and counterclaims, including civil conspiracy, champerty and maintenance.

As there is competent evidence in the record to support findings that James engaged in civil conspiracy, champerty and maintenance in his dealings with plaintiffs and Freer, the trial court could reasonably have concluded that James may have a conflict of interest in regard to this litigation. As such, plaintiffs and James have failed to show that the trial court's disqualification of James as plaintiffs' counsel is an abuse of discretion and manifestly unsupported by reason. *See Dockery*, 357 N.C. at 215, 581 S.E.2d at 435.

Affirmed.

Judges HUDSON and ELMORE concur.