JOHN S. HAIR, SR., Plaintiff,
v.
JAMES D. MELVIN, JR., JANE HARRIS MELVIN, JAMES D. MELVIN, III, HOPE MELVIN STALVEY, KARLA MELVIN LOCKAMY, MELVIN MOTOR CO., INC., and MELVIN FINANCE, INC., Defendants.
No. COA05-572
North Carolina Court of Appeals
Filed February 7, 2006
This case not for publication
Cumberland County No. 03 CVS 4160.
The Yarborough Law Firm, by Garris Neil Yarborough, for plaintiff-appellee.
Jack E. Carter for defendants-appellants.
ELMORE, Judge.
This appeal arises from a judgment entered following a bench trial finding that defendants had defrauded John S. Hair, Sr. (plaintiff) by not protecting his liens on automobiles secured by promissory notes, and were thus liable for unfair and deceptive trade practices. We affirm the judgment of the trial court.
When reviewing the judgment of a trial court sitting without a jury, the appropriate standard of review is "whether competent evidence exists to support its findings of fact and whether the conclusions reached were proper in light of the findings." Lewis v. Edwards, 159 N.C. App. 384, 388, 583 S.E.2d 387, 390 (2003). "Findings of fact are conclusive if supported by competent evidence, irrespective of evidence to the contrary."Oliver v. Bynum, 163 N.C. App. 166, 169, 592 S.E.2d 707, 710 (2004). "Where no exceptions are taken to findings of fact, such findings are binding on appeal." Creech v. Ranmar Props., 146 N.C. App. 97, 100, 551 S.E.2d 224, 227 (2001) (citation omitted). But, a trial court's conclusions of law are fully reviewable. Id. (citation omitted). In any appeal, however, the outermost scope of our review is limited by the assignments of error brought forth by the appellant. See N.C.R. App. P. 10(a). Without following the appellate rules regarding the necessary form of assignments of error and their subsequent inclusion in the brief, our review can be further limited.
On appeal from a judgment containing findings of fact and conclusions of law, the appellant must except and assign error separately to each finding or conclusion that he or she contends is not supported by the evidence, then state which assignments support which questions in the brief. . . . Failure to do so will result in waiver of the right to challenge the sufficiency of the evidence to support particular findings of fact.
Concrete Service Corp. v. Investors Group, Inc., 79 N.C. App. 678, 684, 340 S.E.2d 755, 759-60 (internal citations omitted), cert. denied, 317 N.C. 333, 346 S.E.2d 137 (1986); see also N.C.R. App. P. 28(b)(6). Thus, the assignments of error are not a mere formality; much to the contrary, they are the foundation and frame of legal arguments in one's brief and most importantly their absence or ineffectiveness will leave potential issues of merit beyond the reach of this Court save for the most exceptional instances. See, e.g., May v. Down East Homes of Beulaville, Inc., ___ N.C. App. ___, ___ S.E.2d ___ (No. COA05-547) (03 January 2006); Walker v. Walker, ___ N.C. App. ___, ___ S.E.2d ___ (No. COA04-1601) (06 December 2005); Wade v. Wade, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 265-66, disc. review denied, 313 N.C. 612, 330 S.E.2d 616 (1985); Electric Co. v. Carras, 29 N.C. App. 105, 107-08, 223 S.E.2d 536, 538 (1976).
Here, defendants brought forth ten assignments of error and only argued nine in their brief. These nine assignments do not make specific reference to any of the trial court's fifty-eight findings of fact, which therefore makes the findings conclusive on appeal. See Creech, 146 N.C. App. at 100, 551 S.E.2d at 227; Concrete Service, 79 N.C. App. at 684-85, 340 S.E.2d at 759-60; see also N.C.R. App. P. App. C, Table 4, Part C.
The trial court's findings show that James D. Melvin, Jr. (Melvin Jr.) was married to Jane Harris Melvin (Jane) and had a son James D. Melvin, III (James). These three individuals worked together in the family's used car business, following years of banking experience for Melvin Jr. and Jane. For many years Melvin Jr. issued promissory notes to plaintiff, who had loaned money to "the family business" for the purchase of cars at auctions and other places. Each promissory note__out of eight hundred plus notes, some fifty or more are involved in the litigation__was identical and guaranteed by Melvin Motors, which later was incorporated but had its corporate status suspended by the state. Each note also included a provision for recovery of attorney's fees at fifteen percent of the balance owed on the notes. After receiving credit for the payments made, the balance owed by defendants on the notes in question was $927,118.47.
The trial court found that each defendant knew the vehicles sold at Melvin Motors were subject to a lien in favor of plaintiff. Yet, without satisfying the lien from the sale proceeds, the cars were being sold and financed by Melvin Motors to high risk buyers. Melvin Motors would then sell the customer's indebtedness to Melvin Finance, also a company that at one time was incorporated but has since had that status suspended by the state. Both of the companies were at one time located in the same building, are closely held "corporations" of the family, and are under capitalized. There were never any stock certificates issued by either corporation, no minutes ever produced, and confusion over who was a director or was an officer. Although not listed in any official capacity with either business, James Jr. advised his wife and son on all aspects of both businesses, including signing checks on behalf of Melvin Finance despite having no authority to do so.
Often buyers would default on their payments to Melvin Finance and the company would repossess the car using James Jr.'s business: Mr. Jim's Towing Service. These cars would then be sold at auction, typically back to Melvin Motors. All of the setransactions were done with each defendant's knowledge that the cars were subject to a lien in favor of plaintiff.
45. J.D. Melvin, Jr., repeatedly sold vehicles for Melvin Motor Company and Melvin Motor Company, Inc., which he knew were subject to existing first lien rights of the Plaintiff as set forth on the Promissory Notes.
46. James D. Melvin, III, repeatedly sold vehicles for Melvin Motor Company and Melvin Motor Company, Inc., which he knew or should have known, were subject to existing first lien rights of the Plaintiff as set forth on the Promissory Notes.
47. Jane Melvin and Melvin Finance Company and Melvin Finance, Inc., repeatedly financed vehicles for subsequent purchasers which Jane Melvin knew were subject to existing first lien rights of the Plaintiff as set forth on the Promissory Notes.
48. J.D. Melvin, Jr., Jane Melvin and James D. Melvin, III, conferred regularly about the operation of the various businesses known as Melvin Motor Company, Melvin Finance, Melvin Motor Company, Inc., and Melvin Finance, Inc., and had interlocking management, officer, agent, or financial relationships among said various business enterprises and themselves.
Defendants generally argue that since the promissory notes bear only the signature of James Jr., they do not bind any other defendant and were merely personal transactions between plaintiff and James Jr. The trial court determined otherwise, piercing the corporate veil and finding the individuals defrauded plaintiff based in part on the following binding findings.
28. J.D. Melvin, Jr., has served and continues to serve as Jane Melvin's "advisor" in relationship to Melvin Finance, Inc., and in that capacity J.D. Melvin, Jr., has directed and continues to direct the operation of said business; J.D. Melvin, Jr., has loaned Jane Melvin money for said business without any documentation thereof.
29. J.D. Melvin, Jr., served as an "advisor" to Melvin Motor Company and served in the same capacity to Melvin Finance Company; in that capacity J.D. Melvin, Jr., directed the operation of each company.
30. J.D. Melvin, Jr., has served and continues to serve concurrently as an "advisor" to Melvin Motor Company, Inc., and Melvin Finance, Inc.; in that capacity J.D. Melvin, Jr., has directed and continues to direct the operation of each company.
. . .
32. Both Melvin Motor Company and Melvin Finance operated initially in the same small building located at 213 South Eastern Boulevard, Fayetteville, NC and which was occupied primarily by J.D. Melvin, Jr., and Jane Melvin, with the desks used by each sitting side-by-side.
. . .
36. Although J.D. Melvin, Jr., is not listed as signatory on any bank signature cards for Melvin Finance, Inc., and Jane Melvin testified he had no authority to sign checks for Melvin Finance, Inc., J.D. Melvin, Jr., regularly signs his or Jane Melvin's signature to Melvin Finance, Inc., checks with the knowledge and approval of Jane Melvin.
. . .
43. Melvin Finance and Melvin Motor Company were incorporated on the same day by the same person, Pauline Carter, who was an employee of both Melvin Finance and Melvin Motor Company, and who possessed no license to practice law in the State of North Carolina.
. . .
56. The remaining Defendants failed to maintain the corporate formalities necessary to the validity of the corporate status of Melvin Motor Company, Inc., and Melvin Finance, Inc., and the purported corporate status of both Melvin Motor Company, Inc., and Melvin Finance, Inc., is a sham and nullity.
57. The Plaintiff had been acquainted with J.D. Melvin, Jr., Jane Melvin and James D. Melvin, III, personally for years prior to execution of the Promissory Notes, saw each at the premises of Melvin Motor Company, Melvin Finance, Melvin Motor Company, Inc., or Melvin Finance, Inc., on almost a daily basis between 1986 and 1997, and otherwise had had satisfactory dealings with them.
58. At no time pertinent to the Promissory Notes herein did either James D. Melvin, III, or Jane Melvin, although regularly in contact with the Plaintiff, ever disclose or ever suggest to the Plaintiff that J.D. Melvin, Jr., was not authorized to bind either Jane Melvin, James D. Melvin, III, Melvin Motor Company, Inc., or Melvin Finance, Inc., or that anything was amiss, e.g., that vehicles listed on the Promissory Notes were being sold out-of-trust.
Based on these and other findings, the trial court concluded that defendants conspired together to defraud plaintiff; the corporate veils of Melvin Motors Company, Inc. and Melvin Finance, Inc. should be pierced; and all defendants are responsible for unfair and deceptive trade practices on the basis of their fraudulent acts and failure to disclose material information to plaintiff. As such, the trial court trebled the damages of $927,118.47, leaving defendants responsible for payment of $2,781,355.41 in damages to plaintiff. Costs and attorney's fees were taxed to defendants in accordance with the provisions of the promissory note; this award exceeded $139,000.00.
In the context of their brief, defendants argue the trial court's evidentiary basis for findings that support the conclusions of civil conspiracy, fraud, obtaining property by false pretenses, wrongfully disposing of mortgaged property, and unfair and deceptive trade practices was lacking. However, as stated earlier, due to their failure to properly except to any of the trial court's findings, even the disputed findings are conclusive and we will not examine the evidence supporting them. See Creech, 146 N.C. App. at 100, 551 S.E.2d at 227. Our review, then, is limited to whether the trial court's findings support its conclusions. Id.
Although most of defendants' arguments are without merit, they contend the trial court's listed findings do not necessarily support a conclusion of fraud, since there is no finding as to material representations. Yet, listed as conclusions of law are several factual findings that address these points and do support a legal conclusion of fraud.
3. J.D. Melvin, Jr., conspired with Jane Melvin and James D. Melvin, III, by concert of action or mutually implied understanding, to use Melvin Motor Company, Inc., and Melvin Finance, Inc., as instrumentalities of their common scheme to defraud the Plaintiff.
4. The remaining Defendants knowingly, and by design and by express or tacit agreement among themselves, sold vehicles out of trust upon which the Plaintiff held a first lien under the terms of the Promissory Notes without first, or contemporaneously, or at any other time, paying off said lien, thereby improperly disposing of mortgaged chattel or personal property to the detriment of the Plaintiff.
5. J.D. Melvin, Jr., individually and as part of a conspiracy with Jane Melvin and James D. Melvin, III, accomplished by concert of action or mutually implied understanding, repeatedly made false representations to the Plaintiff both orally and on the face of the documents that the Promissory Notes would be secured by a first lien on the motor vehicles identified in said Promissory Notes, that he (J.D. Melvin, Jr.) would perfect and protect the Plaintiff's lien rights in said vehicles, and that payment of the Promissory Notes would be secured by Melvin Motor Company, which representations were false at the time each was made, were material facts, were calculated to deceive and made with intent to deceive the Plaintiff, and did in fact deceive the Plaintiff.
6. J.D. Melvin, Jr., knew that the representations referred to above were made to the Plaintiff and were untrue at the time they were uttered or that they were uttered with no then existing intent to perform as promised; Jane Melvin and James D. Melvin, III, knew of the falsity of said representations or were recklessly indifferent to the truth or falsity of said representations and whether there was any existing intent to perform as promised at the time said representations were uttered.
7. The Plaintiff reasonably relied upon the representations referred to above to his detriment in the he would have never loaned the money represented by the subject Promissory Notes without the said representations having been made to the Plaintiff.
It is not fatal to the judgment that these "conclusions" are in part findings, or are otherwise mislabeled, since the basis for the reasoning and judgment of the trial court is clear, see Dunevant v. Dunevant, 142 N.C. App. 169, 173-74, 542 S.E.2d 242, 245 (2001), and the judgment itself states that "if a Finding of Fact is misidentified herein as a Conclusion of Law" or vice versa, "then said item shall be deemed to be that which it should be."
To support a conclusion of fraud, the trial court's findings must address the following elements: "(1) a false representation or a concealment of a material fact which is (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party." Willen v. Hewson, ___ N.C. App. ___, ___, 622 S.E.2d 187, 190-91 (2005). The trial court's findings do just that; plaintiff reasonably relied on the Melvin family to maintain his liens on the cars purchased by the businesses and defendants failed to disclose that they were selling the cars and not making payments on the liens. Plaintiff has been damaged by these misrepresentations in that he has not been paid on numerous promissory notes that are overdue. Further, fraud can serve as the basis for an unfair and deceptive trade practices claim.
`Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . .' Bhatti v. Buckland, 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991) (quoting Hardy v. Toler, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975)). 'Once the plaintiff has proven fraud, thereby establishing prima facie a violation of Chapter 75, the burden shifts to the defendant to prove that he is exempt from the provisions of N.C.G.S. § 75-1.1.' Id. at 243-44, 400 S.E.2d at 442 (emphasis added) (citation omitted).
Willen, ___ N.C. App. at ___, 622 S.E.2d at 191-92. As such, we see no error in the trial court's conclusions. Accordingly, we affirm the judgment of the trial court.
Affirmed.
Judges McCULLOUGH and LEVINSON concur.
Report per Rule 30(e).