WISEMAN MORTUARY, INC., Petitioner v. VALERIE J. BURRELL AND HAZELENE W. BURRELL, Respondents

No. COA06-926

(Filed 4 September 2007)

## 1. Divorce— Missouri decree—service of notice

In an action to determine who should have possession of the deceased's body, the trial court did not err by concluding that a Missouri divorce decree was valid. The findings which Hazelene

Burrell contends should have been categorized as conclusions did not involve the exercise of judgment or the application of legal principles; the findings were supported by competent evidence and were conclusive, regardless of contradictory evidence. As to the evidence challenging her receipt of service in the Missouri divorce action, the trial judge in a bench trial has the duty to pass upon the credibility of the witnesses.

**2. Trials— dismissal of counterclaims—erroneous order vacated**

A portion of an order addressing the dismissal of respondents' claims was vacated where the order stated that respondents had voluntarily dismissed their claims, but the transcript confirmed that they had dismissed only their claims against petitioner.

Appeal by respondent-appellant from judgment entered 3 April 2006 by Judge John W. Dickson in Cumberland County District Court. Heard in the Court of Appeals 10 April 2007.

*Mitchell Brewer Richardson, by Ronnie M. Mitchell, for respondent-appellant.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by Jonathan McGirt, for respondent-appellee.*

ELMORE, Judge.

John Edward Burrell (John) died on 24 July 2005 in Durham. His death certificate states that he was married to Hazelene Williams Burrell (Hazelene) at the time of his death. Hazelene arranged for a burial at the Sandhills Vet Cemetery in Spring Lake. She contracted with Wiseman Mortuary, Inc. (Wiseman Mortuary) to provide funeral services, which included embalming, transportation to the funeral home, and a viewing. Hazelene also contracted to purchase a 20-gauge Bronze Tallanwide casket and a Wilbert concrete graveliner. After Hazelene contracted with Wiseman Mortuary, but before John Burrell's funeral, Valerie J. Burrell (Valerie) came forward claiming to be John's legal wife. She asked that John's body be returned to Georgia for burial.

Wiseman Mortuary filed a petition for declaratory judgment and issuance of a summons to determine which of the two respondents, Hazelene or Valerie, should have possession of John's body. Valerie

answered, counterclaimed, and cross-claimed, asserting that she was the surviving spouse and legal widow of John Burrell. Hazelene then answered, requesting that the court dismiss the petition for failure to state a claim upon which relief can be granted. She also moved to dismiss Valerie's cross-claims for the same reason. She continued to assert that she, not Valerie, was John's legal widow.

John and Hazelene were married in South Carolina on 15 January 1954 and had eleven children. According to Hazelene, they lived together in North Carolina until John departed pursuant to military orders. On 12 November 1969, John filed for divorce from Hazelene when he was living in Missouri, but Hazelene claimed that she never signed the receipt acknowledging that she received the summons, despite the presence of her signature on that receipt. She alleged that John did not obtain a valid divorce from her, and that even though "she suspected and became aware that John E. Burell [sic]. . . was consorting with and was involved with other women, [he] continued to represent himself to Hazlene [sic] Burrell as being her husband."

It appears that John next married Pearline Jones, who is not a party to this action, on 27 March 1970. He divorced her on 3 November 1989. On 5 November 1989, John then married Valerie in Atlanta, Georgia. He left Valerie in August, 2000, and moved back to North Carolina, where he resumed cohabitation with Hazelene at her home in Fayetteville. John and Valerie did not divorce before his death.

The trial court issued its final judgment and order on 3 April 2006. It made the following relevant findings of fact:

8. On or about November 12, 1969 John E. Burrell and Hazelene Williams were purportedly divorced in Jackson County, Missouri.

\* \* \*

11. This Court received into evidence . . . the records of the divorce proceedings in Jackson County, Missouri between John E. Burrell and Hazelene Burrell.

12. The divorce decree entered by the Court in Jackson County, Missouri specifically finds that the defendant was, "lawfully summoned by registered mail, registered return receipt."

13. The Missouri record also contains a copy of a receipt marked "deliver to addressee only" bearing the purported signature

of Hazelene Burrell and showing a delivery date of October 11, 1969.

14. The records [of the divorce proceedings] contained in Respondent's Exhibit V-6 do not contradict the findings contained in the Missouri divorce decree.

15. Both Respondents announced in open court that they voluntarily dismissed their claims.

The trial court made nine conclusions of law, including:

2. Respondents' claims, as raised by their pleadings, should be dismissed.

* * *

5. The divorce record from Jackson County, Missouri, contains recitals of jurisdiction and service, and those facts are deemed to import absolute verity unless contradicted by other parts of the record.

6. The record of the divorce of John E. Burrell and Hazelene Burrell from Jackson County . . . does not contain contradicting findings sufficient to overcome the presumption of its validity.

7. The divorce decree entered in Jackson County, Missouri is entitled to full faith and credit in the State of North Carolina.

8. At the time of his death, John E. Burrell was legally married to Valerie James Burrell.

The court then declared Valerie to be John's lawful widow and surviving spouse, dismissed Valerie and Hazelene's claims, and divided the costs equally between the two women. Hazelene appealed the judgment and order.

[1] Hazelene first argues that it was error for the trial court to enforce the Missouri divorce decree because the Missouri court lacked jurisdiction to enter the divorce decree. Hazelene avers that she did not receive proper service, and as a result, the "fundamental standards of due process were not satisfied to obtain jurisdiction over" her because she did not have the minimum contacts with Missouri required by *International Shoe* and *Worldwide Volkswagen*. She also claims that the trial court did not make the findings and conclusions of law required by N.C. Gen. Stat. § 1A-1, Rule 52, arguing

that the trial court instead made findings of fact that were essentially conclusions of law and not ultimate facts.

"The standard by which we review the findings is whether any competent evidence exists in the record to support them." *Hollerbach v. Hollerbach*, 90 N.C. App. 384, 387, 368 S.E.2d 413, 415 (1988). Findings of fact and conclusions of law "allow meaningful review by the appellate courts." *O'Neill v. Southern Nat. Bank*, 40 N.C. App. 227, 231, 252 S.E.2d 231, 234 (1979). "Findings of fact are conclusive if supported by competent evidence, irrespective of evidence to the contrary." *Oliver v. Bynum*, 163 N.C. App. 166, 169, 592 S.E.2d 707, 710 (2004) (citation omitted).

We first address Hazelene's concern that the trial court erroneously "made 'findings' which were effectively conclusions of law." N.C. Gen. Stat. § 1A-1, Rule 52 requires that a court, when trying a matter without a jury, must "find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A-1, Rule 52 (2005). "A 'conclusion of law' is a statement of the law arising on the specific facts of a case which determines the issues between the parties." *In re Everette*, 133 N.C. App. 84, 85, 514 S.E.2d 523, 525 (1999). " '[I]f [a] finding of fact is essentially a conclusion of law . . . it will be treated as a conclusion of law which is reviewable on appeal.' " *In re R.A.H.*, 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007) (citations omitted) (alteration in original).

> We acknowledge that the classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment, or the application of legal principles, is more properly classified a conclusion of law.

*Everette*, 133 N.C. App. at 85, 514 S.E.2d at 525 (citations and quotations omitted).

Hazelene only argues that findings of fact Nos. 13 and 14 are improperly categorized as findings of fact. However, we cannot agree that these findings should be conclusions of law. We have had an opportunity to review the documents addressed by findings of fact Nos. 13 and 14 and it is apparent that no "exercise of judgment" or "application of legal principles" is necessary to make the statements to which Hazelene objects. The receipt of service is plainly marked "deliver to addressee only," shows a delivery date of 11 October 1969,

and bears a signature that reads, "Hazelene Burrell." These markings do not contradict the Missouri divorce decree.

Hazelene next argues that the district court "failed to apply logical reasoning from the evidentiary facts to make a finding to determine that the Missouri judgment was adequately supported by competent evidence." She reasons that the trial court's decision does not take into account contradictory evidence in the record. However, as stated above, findings of fact are conclusive upon appeal so long as they are supported by competent evidence, regardless of the existence of contradictory evidence.

We have reviewed the exhibits submitted for the trial court's review, and we hold that competent evidence does exist to support the findings of fact objected to by Hazelene, save finding of fact No. 15. Hazelene argues that the Missouri divorce decree is invalid because she did not receive proper notice. A sticking point is the recurrent use of "Mazelene" in place of "Hazelene" on the summons and other court documents. However, our Supreme Court has stated, "It is also well established that a name merely misspelled is nevertheless the same name." *Cogdell v. Telegraph Co.*, 135 N.C. 431, 438, 47 S.E. 490, 493 (1904) (citations and quotations omitted). More recently, this Court reasoned:

> Although service of process should correctly state the name of the parties, a mistake in the names is not always a fatal error, and as a general rule a mistake in the given name of a party who is served will not deprive the court of jurisdiction. 62 Am. Jur. 2d Process § 18 (1972). As stated in *Patterson v. Walton*, 119 N.C. 500, 501, 26 S.E. 43 (1896), "Names are to designate persons, and where the identity is certain a variance in the name is immaterial." Also, error or defects in the pleadings not affecting substantial rights are to be disregarded. *Id.* When original process has been served properly and amendments to it are to make process and pleadings consistent, the court will retain jurisdiction. *Fountain v. County of Pitt*, 171 N.C. 113, 87 S.E. 990 (1916).

*Jones v. Whitaker*, 59 N.C. App. 223, 225-26, 296 S.E.2d 27, 29 (1982). *Jones* distinguished itself from cases in which the proper party was never served, holding that a party does not suffer prejudice from a misspelled name if that party receives service. *Id.* at 226, 296 S.E.2d at 30. Here, it appears that Hazelene did receive service, as evidenced by her signature upon the receipt.

As to the issue of that signature's authenticity, we have held:

> Where acceptance of service is used, there is a rebuttable pre-
> sumption that service was proper if the return of process bears
> the defendant's signature and is dated. In order to overcome this
> presumption, a defendant must produce clear, unequivocal, and
> convincing evidence of the alleged defect. If supported by such
> evidence, the findings of the trial court are binding on this Court,
> although the conclusions of law may be reviewed *de novo*.

*Freeman v. Freeman*, 155 N.C. App. 603, 607, 573 S.E.2d 708, 711
(2002) (citations omitted). Hazelene asserts that she successfully
rebutted the presumption of proper service by producing clear,
unequivocal, and convincing evidence that the signature is not hers.
We cannot agree.

In *Freeman*, the wife argued that the signature upon the receipt
of service was not hers and had been forged by her husband. *Id.* at
607, 573 S.E.2d at 711-12. She successfully rebutted the presumption
by presenting testimony by handwriting experts that the signature
was not hers. *Id.* In addition, Mrs. Freeman presented evidence that
she and her husband continued to live together as a married couple
after the purported divorce. *Id.* at 608, 573 S.E.2d at 712. The husband
even listed Mrs. Freeman as his wife on an application for disability
benefits. *Id.* After reviewing the evidence, "[t]he trial court specifi-
cally found defendant's evidence to be 'clear, unequivocal and con-
vincing' that defendant had not been served with process." *Id.*

Hazelene argues that it was impossible for her to have received
the summons because she did not live at the address where it was
delivered, although she admits to having lived there fifteen years ear-
lier. Although both Hazelene and her sister, Ethel Campbell, testified
that Hazelene had moved away from the address in question by the
time the summons was signed, it appears that the judge did not find
that testimony credible for the reasons stated below. Although a
handwriting expert is not required in every case, one might have been
helpful here. Valerie submitted photocopies of Hazelene's signature
from other documents for our comparison with the signature on the
summons; to the untrained eye, they look passably similar.

Valerie also submitted a general warranty deed dated 30 June
1998 that lists "HAZELENE W. BURRELL, unmarried" as the grantee.
A deed of trust from the same date lists the grantor as "HAZELENE

WISEMAN MORTUARY, INC. v. BURRELL

[185 N.C. App. 693 (2007)]

W. BURRELL. AN UNMARRIED WOMAN." These documents suggest that Hazelene held herself out to the public as an unmarried woman. They also diminish Hazelene's credibility. Before submitting these documents into evidence, Valerie's counsel asked Hazelene at least five times, in various iterations, whether Hazelene had ever presented herself as being not married to John Burrell. When faced with the documents that clearly contradicted her previous answers, Hazelene later explained that she had listed herself as unmarried for a particular reason: John Burrell had bad credit and the bank would not have given Hazelene the loan if she had included his name on the application. Hazelene's response diminishes her credibility further because it is apparent that this claim of being unmarried was thought out in advance, and not a clerical error or oversight. It is well-settled that in a bench trial, the trial judge "has the duty to pass upon the credibility of the witnesses who testify. He decides what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom." *General Specialties Co. v. Teer Co.*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979).

Accordingly, we hold that the trial court did not err by concluding that the Missouri divorce decree was valid. The trial court's findings of fact are supported by competent evidence, and those findings of fact in turn support the conclusions of law.

[2] Finally, Hazelene objects to finding of fact No. 15, which states, "Both Respondents announced in open court that they voluntarily dismissed their claims." She avers that she did not voluntarily dismiss any claims other than her counterclaims, in contradiction with the trial court's finding and corresponding order dismissing her remaining claims. She contends that she dismissed only her claims against Wiseman Mortuary. The transcript confirms that both Hazelene and Valerie dismissed only their claims against Wiseman Mortuary. Therefore, we vacate that portion of the trial court's order that addresses the dismissal of respondents' claims.

Affirmed in part, vacated in part.

Judges McGEE and STEPHENS concur.