HUNTER, JR., ROBERT N., Judge.
Respondents appeal from a superior court order reversing a decision of the Board of Review and concluding Margaret Whichard is eligible for unemployment benefits. Respondents contend the superior court did not apply the proper standard of review and did not properly apply the facts to the law. We affirm the superior court's decision.
I. Facts and Procedural Background
Following her termination from DHI Mortgage, Whichard filed a new initial claim for unemployment insurance benefits effective 20 April 2014. The Division of Employment Security (the Division) determined the weekly benefit amount payable to Whichard was $350.00, and the maximum amount of unemployment insurance benefits payable to Whichard was $6,650.00. The Division referred the claim to an adjudicator on the issue of separation from last employment. The adjudicator determined DHI Mortgage terminated Whichard for unacceptable personal conduct. As a result, she did not qualify for benefits. Whichard filed an appeal from the determination to an Appeals Referee. The Appeals Referee reversed the adjudicator's decision, finding Whichard qualified for receiving unemployment benefits. DHI appealed the Referee's decision to the Board of Review. The Board of Review reversed the Referee's decision, concluding that Whichard was not qualified for benefits because DHI terminated Whichard for violating the Employee Conduct and Work Rules and for conduct disregarding the standard of behavior for which an employer had the right to expect of an employee. The Board of Review found the following facts, which are unchallenged and therefore binding on appeal.
Whichard worked in DHI's Raleigh office under the supervision of Pam Carroll. Cindy Sheldon was the branch manager of the Raleigh office but did not have the authority to terminate Whichard's employment. In September 2013, Whichard complained to Ingrid Peterson, the northern regional processing manager, and Carroll concerning Sheldon's conduct in the workplace. She complained Sheldon was loud and abrasive and often slammed doors. Whichard requested a transfer to the branch's location in Wilmington, North Carolina, but there was no processing work available at that location. In December 2013 Whichard again complained to Peterson regarding Sheldon. Whichard stated she felt she was in a hostile work environment because of Sheldon's continued abrasiveness. On 17 January 2014, Whichard submitted a written complaint concerning Sheldon's workplace conduct to the vice president of human resources compliance as well as the president of the company. This complaint was forwarded to Vickie Jones, Human Resources Manager. Jones spoke to Whichard regarding her complaint but did not contact other employees at her office regarding allegations of Sheldon's conduct. Jones discussed the incidents with Sheldon who denied the allegations. Jones told Sheldon she received an anonymous complaint regarding Sheldon's conduct. Neither Peterson or Jones informed Sheldon who complained about her.
After hearing nothing from Jones in two weeks, Whichard sent a follow-up email on 13 February 2014 regarding her complaint. Whichard believed Sheldon was retaliating against her, and stated "things are no better in the Raleigh office. Some behaviors have improved while others are much worse." She indicated Sheldon continued to curse, use gay and racial slurs, talk loudly, conduct county business during work hours, gossip, say unkind things about employees and others, use negative and opinionated language, and exhibit insensitivity towards the needs and concerns of those around her. No one contacted Whichard regarding the concerns expressed in either of her two complaints. Sheldon later humiliated Whichard in a staff meeting. Sheldon said she would be supervising the processors from now on, and "everyone might not be happy about this but oh well ... maybe they'll need to seek other employment." After the meeting, Whichard overheard Sheldon say on the telephone "I just got her goat. The company isn't making any changes. I said that to get a reaction from her. I'm a mean bitch, I know it but I enjoyed making her nervous. I bet she ... in her pants thinking she'd have me for a manager. I've been trying to run her off, hopefully this will do it." She then concluded by saying "It's time for her to take her old ass somewhere else."
A few days later, Sheldon acknowledged a female employee complained about her and stated "You don't mess with Cynthia Sheldon. Especially my job and my income. If you do, I'll take you down. She doesn't know who she's dealing with. The gloves are out, I'll bury her." Whichard overheard Sheldon refer to her granddaughter as a "biracial gay baby" and that it may be time for her to "quit work and draw her social security. She sure doesn't fit in here with the rest of us."
In March 2014, Whichard called Carroll and informed her Sheldon continually bullied and harassed her. She told Carroll she was afraid of Sheldon. Carroll did not report the complaint to upper management or investigate the matter. Whichard also sought assistance from DHI's Employee Assistance Program. On 18 April 2014, Whichard expressed her frustrations with Sheldon on Facebook to friends and family members. In response to a comment from her son, she posted the following: "I'll quit before I do something stupid-like bash in Cindy's brains with a baseball bat. But I'm not a quitter." Another employee informed Peterson about the Facebook post. She reported the incident to upper management and the human resources department. DHI's Employee Conduct and Work Rules provided for disciplinary action, including termination, for "fighting or threatening violence in the workplace" and for "disruptive activity in the workplace." DHI decided to terminate Whichard for violation of the Employee Conduct and Work Rules due to her Facebook posting which DHI perceived as a threat.
Whichard appealed the Board's decision to superior court. The superior court reversed the Board of Review's decision, determining Whichard's conduct did not disqualify her from receiving unemployment benefits. The court determined Whichard was not guilty of misconduct because the findings of fact did not support the conclusion that she violated a work rule; her Facebook post did not threaten violence or a disruption of workplace activity nor did it constitute a violation or disregard of standards of behavior that the employer has the right to expect of an employee DHI timely filed a notice of appeal.
II. Jurisdiction
Jurisdiction lies in this Court pursuant to N.C. Gen.Stat. § 96-15(i) and § 7A-27(b).
III. Standard of Review
"The standard of review in appeals from the [Division], both to the superior court and to the appellate division, is established by statute." Binney v. Banner Therapy Prods., Inc., 362 N.C. 310, 315, 661 S.E.2d 717, 720 (2008). The statute reads in pertinent part: "In any judicial proceeding under this section, the findings of fact by the Division, if there is any competent evidence to support them, and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." N.C. Gen Stat. § 96-15(i) (2015). If no exception to findings of fact is stated, then those findings are presumed to be supported by the evidence and are binding on appeal. N.C. Gen.Stat. 96-15(i) (2015) ; Hagan v. Peden Steel Co., 57 N.C.App. 363, 364, 291 S.E.2d 308, 309 (1982).
"In considering an appeal from a decision of the [Division], the reviewing court must (1) determine whether there was evidence before the [Division] to support its findings of fact and (2) decide whether the facts found sustain the [Division]'s conclusions of law and its resulting decision." Intercraft Industries Corp. v. Morrison, 305 N.C. 373, 376, 289 S.E.2d 357, 359 (1982). The Board of Review's conclusions of law are reviewed de novo. N.C. Gen.Stat. § 96-15(i) ; Housecalls Nursing Servs., Inc. v. Lynch, 118 N.C.App. 275, 278, 454 S.E.2d 836, 839 (1995).
IV. Analysis
"Ordinarily a claimant is presumed to be entitled to benefits under the Unemployment Compensation Act, but this is a rebuttable presumption with the burden on the employer to show circumstances which disqualify the claimant." Binney v. Banner Therapy Prod., Inc., 362 N.C. 310, 317, 661 S.E.2d 717, 720 (2008) (quoting Intercraft Industries Corp. v. Morrison, 305 N.C. 373, 376, 289 S.E.2d 357, 359 (1982) ). "An individual who the Division determines is unemployed for misconduct connected with the work is disqualified for (unemployment) benefits." N.C. Gen.Stat. § 96-14 .6(a) (2015). "Misconduct connected with the work" includes "[c]onduct evincing a willful or wanton disregard of the employer's interest as is found in deliberate violation or disregard of standards of behavior that the employer has the right to expect of an employee or has explained orally or in writing to an employee." N.C. Gen.Stat. § 96-14.6(b)(1) (2015). "Violation of an employer's work rules is misconduct unless 'the evidence shows that the employee's actions were reasonable and were taken with good cause...." ' Binney, 362 N.C. at 316, 661 S.E.2d at 720 (quoting Intercraft Industries Corp., 305 N.C. at 375, 289 S.E.2d at 359 ). "In the absence of a specific rule violation, [m]isconduct may consist in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee." Binney, 362 N.C. at 316, 661 S.E.2d at 720 (internal citations and quotations omitted).
Appellant asserts the superior court disregarded the statutory standard of review, which prohibited the superior court from finding facts for itself. Appellant claims the Board found as fact Whichard's Facebook post violated workplace rules, while the superior court found the opposite. Appellant also asserts the superior court incorrectly applied the law to the facts when it held Whichard was not discharged for misconduct. We are not persuaded by either claim.
We hold the superior court correctly applied the statutory standard of review, adopting the Board of Review's findings of fact and confining its review to the examination of the Board's legal conclusions. We recognize the inherent difficulty in differentiating between factual findings and conclusions of law. A conclusion of law is a "statement of the law arising on the specific facts of a case which determines the issues between the parties." Wiseman Mortuary, Inc. v. Burrell 185 N.C.App. 693, 697, 649 S.E.2d 439, 442 (2007) (quoting In re Everette 133 N.C.App. 84, 85, S.E.2d 523, 525 (1999)). "As a general rule, any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." Wiseman Mortuary, Inc. 185 N.C.App. at 697, 649 S.E.2d 439, 442 (2007) (citations and quotations omitted).
Appellant asserts the Board of Review found as a fact Whichard's post constituted a violation of DHI's work rules. The record before us does not support this claim. The Board found as fact claimant was "separated from employment for violation of the employer's policies due to ... posting an alleged threatening comment about Cindy Sheldon," and "employer decided to terminate the claimant's employment for violation of the Employee Conduct and Work Rules due to her Facebook posting which the employer perceived as a threat towards Sheldon." However, the Board's conclusion that Whichard's post was a threatening statement is a statement of law requiring both the exercise of judgment and the application of legal principles. The superior court did not step outside the statutory limitation of authority by reviewing this conclusion de novo.
We also affirm the superior court's determination that Whichard's Facebook post was not "threatening violence" and therefore was not a rule violation that constitutes misconduct as a matter of law. A communication of a threat must be a willful threat to physically harm another stated in a manner leading a reasonable person to believe the threat is likely to be carried out. See N.C. Gen.Stat. 14-277.1(1, 3) (2015). Where a man laid his hand on his sword and said, "if it were not assize time, I would not take such language from you," the Court held the condition attached to his statement showed the man lacked intent to assault. State v. Davis, 23 N.C. 125, 127 (1840) (quoting Tuberville v. Savage, 1 Mod. Rep. 3 (1669)). Without intent, there can be no will to injure. Here, as in Tuberville, Whichard makes a conditional statement, indicating she "would quit work" before she did anything "stupid" like that. There is no evidence Whichard intended to threaten Sheldon. It's unlikely she intended anyone at DHI to view the post at all, as she addressed it to "friends and family members."
If no rule violation occurs, misconduct "may consist in deliberate violations or disregard of standards of behavior that the Employer had a right to expect." Binney, 362 N.C. at 316, 661 S.E.2d at 720 (quoting Hagan 57 N.C.App. at 365, 289 S.E.2d at 309 (1982)). The Board made no factual finding to support its conclusion that Whichard's Facebook post violated standards of behavior that the Employer had a right to expect. The superior court "decide[s] whether the facts found sustain the [Division]'s conclusions of law and its resulting decision," Intercraft Industries Corp. v. Morrison, 305 N.C. 373, 376, 289 S.E.2d 357, 359 (1982), and correctly held that the Board's conclusion was without merit.
V. Conclusion
We affirm superior court's award of unemployment benefits to the claimant.
AFFIRMED.
Judges ELMORE and DAVIS concur.
Report per Rule 30(e).