PCI ENERGY SERVICES v. WACHS TECHNICAL SERVICES

[122 N.C. App. 436 (1996)]

N.C.G.S. § 20-286(13b) (Supp. 1995). Although the bill amending section 20-286(13b) states that it "does not affect litigation pending at the time of its enactment . . . portions of the amendment[] are [nevertheless] helpful in ascertaining the intent of the legislature in enacting the original version." *General Motors Corp.*, 78 N.C. App. at 524, 338 S.E.2d at 117. This new amendment plainly reveals the intent of the legislature to exclude population outside the designated radius and indicates an intent to clarify the earlier version of the statute. *See id.*; *see also Sykes v. Clayton, Comm'r of Revenue*, 274 N.C. 398, 406, 163 S.E.2d 775, 781 (1968) (title of bill is "a legislative declaration of the tenor and object of the Act"). Therefore, the pre-amendment version of section 20-286(13b) must be construed consistent with the 1995 amendment and population determined in accordance therewith.

Accordingly, the Commissioner erred in his conclusion to include population lying outside the ten mile radius when determining "relevant market area." This matter is remanded for a determination of the "relevant market area" using the proper method of measuring population.

Reversed and remanded.

Judges MARTIN, Mark D. and SMITH concur.

———

PCI ENERGY SERVICES, INC., PLAINTIFF-APPELLEE, v. WACHS TECHNICAL SERVICES, INC., DEFENDANT-APPELLANT, AND CHARLES L. WACHS, RESPONDENT-APPELLANT.

No. 9426SC225

(Filed 21 May 1996)

## 1. Judgments § 139 (NCI4th)— consent judgment—enforceability through contempt

Because the trial court did not merely "rubber stamp" the parties' private agreement but instead explicitly approved, adopted, and incorporated the settlement agreement, the court transformed the parties' agreement into the court's own determination of the parties' respective rights and obligations, and the consent judgment was thus a court order enforceable through the court's contempt powers.

**Am Jur 2d, Judgments §§ 207-227.**

Right to appellate review of consent judgment. 69 ALR2d 755.

2. Judgments § 138 (NCI4th)— press release—violation of consent judgment—sufficiency of evidence

The record contained competent evidence to support the trial court's findings of fact and conclusions of law that defendants violated the parties' consent judgment by writing a press release with regard to confidentiality, its admission of wrongdoing, and its ability to offer welding services which violated the consent judgment; therefore, defendants were properly held in contempt for violating the consent judgment.

Am Jur 2d, Judgments §§ 207-227.

3. Costs § 26 (NCI4th)— enforcement of consent judgment— plaintiff entitled to attorney fees

The trial court did not err in awarding attorney's fees to plaintiff since the parties' consent judgment contained an express provision in which defendant agreed to pay plaintiff's costs associated with enforcing the consent judgment.

Am Jur 2d, Costs §§ 57-70.

Appeal by defendant Wachs Technical Services, Inc. and respondent Charles L. Wachs from order entered 16 December 1993 by Judge Robert M. Burroughs in Mecklenburg County Superior Court. Heard in the Court of Appeals 6 April 1995.

*Helms, Cannon, Hamel & Henderson, P.A., by Christian R. Troy; Daniel C. Abeles, Assistant General Counsel, Westinghouse Electric Company; and McDermott, Will & Emery, by William P. Schuman, for plaintiff-appellee.*

*Chuhak & Tecson, P.C., by James W. Naisbitt, and Robinson, Bradshaw & Hinson, P.A., by Louis A. Bledsoe, III, for defendant-appellants.*

McGEE, Judge.

Plaintiff, PCI Energy Services, Inc. (PCI) and defendant, Wachs Technical Services, Inc. (WTS) perform welding services, among other things. On 23 February 1993, PCI filed suit against WTS and its general manager, Richard Bryant, for unfair competition and for theft

and conversion of PCI's property, trade secrets, equipment, and blueprints. Specifically, PCI alleged WTS misappropriated PCI's technology for performing narrow groove welding. The technology at issue included a special type of welding torch and gas cup developed by PCI.

On 18 March 1993, after a hearing with oral arguments from counsel and presentation of evidence by the parties, the trial court entered a preliminary injunction against WTS. The injunction barred WTS from performing narrow groove welding with any welding torch and gas cup derived from PCI technology or from advertising that it could do so. The case was set for trial on 9 August 1993.

On 7 August 1993, the parties entered into a settlement agreement. On 10 August 1993, the trial court entered a consent judgment which found:

> [T]he parties have entered into a Settlement Agreement which can be made the subject of this Consent Judgment and, accordingly, [the court] approves and adopts the Settlement Agreement, the Injunction contained therein, and its other terms and provisions, as a part of this Consent Judgment, and incorporates and attaches hereto such Settlement Agreement among the parties, signed by each of the parties on August 7, 1993 . . . .

> Now, THEREFORE, with the consent of the parties, and in the discretion of the Court, it is Ordered, Adjudged, and Decreed that the aforementioned Settlement Agreement be, and it hereby is, adopted, approved, and hereby made an enforceable Judgment of the Court . . . .

A copy of the settlement agreement was attached to the consent judgment.

The same day the court entered the consent judgment, WTS and its president, Charles Wachs, circulated a press release which PCI alleged violated the terms of the consent judgment. PCI filed a motion for civil and criminal contempt against WTS and Charles Wachs.

The trial court heard PCI's motion for contempt on 14 October 1993 and issued an order holding WTS and Charles Wachs in contempt of the consent judgment. From this contempt order, defendants appeal.

## I.

**[1]** WTS and Wachs (defendants) first argue the trial court erred in using its contempt powers. Specifically, defendants contend the consent judgment is not a court order that can be enforced through contempt.

"If a consent judgment is merely a recital of the parties' agreement and not an adjudication of rights, it is not enforceable through the contempt powers of the court." *Nohejl v. First Homes of Craven County, Inc.*, 120 N.C. App. 188, 190, 461 S.E.2d 10, 12 (1995); *See also Crane v. Green*, 114 N.C. App. 105, 106, 441 S.E.2d 144, 145 (1994). In *Nohejl*, this Court held the trial court's consent order contained findings of fact and that the order was based on those findings. 120 N.C. App. at 191, 461 S.E.2d at 12. Therefore, the consent judgment was enforceable through the court's contempt powers. *Id.* In *Crane*, this Court found the consent judgment contained no determination by the trial court of either issues of fact or conclusions of law and therefore, "the judgment [was] nothing more than a contract which is enforceable only by means of an action for breach of contract." 114 N.C. App. at 106, 441 S.E.2d at 145.

When a trial court uses its contempt powers to enforce a consent judgment, it must demonstrate that it has carefully read the settlement agreement and considered its legal effect. A court should not simply "rubber stamp" the parties' agreement. Here, the consent judgment did go beyond a mere recital of the settlement agreement and actually involved the court's determination and adjudication of the parties' rights.

The procedural history of this case is significant. The same trial judge who entered the consent judgment had also previously entered the preliminary injunction against defendants after conducting a hearing on plaintiff's motion for an injunction. Thus, when the parties presented the settlement agreement to the court, the court was familiar with the facts and issues of the case.

The language of the consent judgment is also significant. In the consent judgment, the trial court found that "the parties have entered into a Settlement Agreement which can be made the subject of this Consent Agreement." The court then explicitly "approve[d,] . . . adopt[ed,] . . . incorporat[ed] and . . . made an enforceable Judgment of the Court," the terms of the settlement agreement. By "adopting" and "incorporating" the settlement agreement, the court transformed

the parties' agreement into the court's own determination of the parties' respective rights and obligations.

Settlements negotiated by parties are encouraged by the courts. *Insurance Co. v. Surety Co.*, 1 N.C. App. 9, 14, 159 S.E.2d 268, 273 (1968). Parties who reach a settlement agreement have the option of filing voluntary dismissals of their claims and then using traditional contract remedies in the event there is a violation of the agreement. However, when parties to a settlement ask the court to make the terms of the settlement a court-ordered judgment, the parties must be prepared for the court to use its contempt powers to enforce its orders.

Because the trial court did not merely "rubber stamp" the parties' private agreement, we find the consent judgment is a court order enforceable through the court's contempt powers.

II.

[2] Defendants next contend the trial court erred as a matter of law in determining that the text of the WTS press release violated terms of the consent judgment. We disagree.

"Review in contempt proceedings is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." *Adkins v. Adkins*, 82 N.C. App. 289, 292, 346 S.E.2d 220, 222 (1986).

The trial court concluded the press release was "inaccurate and misleading and violates the terms of the settlement agreement and consent judgment." It held the publication of the press release was in contempt of the court's order and corrective action was needed. We find there is competent evidence to support the trial court's conclusion. The settlement agreement, which was incorporated into the court's consent judgment, prohibited defendants from advertising for eighteen months that WTS had the ability to perform narrow groove welding services:

> with any welding torch and gas cup, *other than* Commercially Available welding torches and gas cups (a) obtained from [vendors unrelated to PCI] . . . (b) . . . [which were] not created or procured with any confidential information . . . obtained . . . from PCI, and (c) which are not modified by WTS or Bryant. (emphasis added).

.

The agreement also prohibited defendants from advertising for three years that WTS had the ability to:

(a) [use] an oblong gas cup that sits above or outside or on the lip of the groove while welding in a Narrow Groove or any welding groove having an included angle of fifty (50) degrees or less, *other than* a Commercially Available gas cup that (i) is not created or procured with any information . . . obtained, directly or indirectly, from WTS or Bryant, (ii) . . . was not created or procured with any confidential information . . . obtained, directly or indirectly, from PCI, and (iii) was not modified by WTS or Bryant; or

(b) [use] a gas cup design that sits above or outside or on the lip of the groove while welding in grooves of approximately two and one-half (2 1/2) inches deep or greater, other than a Commercially Available gas cup that (i) is not created or procured with any information . . . obtained, directly or indirectly, from WTS or Bryant, (ii) . . . was not created or procured with any confidential information . . . obtained . . . from PCI, and (iii) was not modified by WTS or Bryant. (emphasis added).

The press release by defendants stated "[WTS] retains the right to fully compete in <u>ALL</u> types of welding with its new state-of-the-art welding systems . . . ." Defendants argue the consent judgment permitted WTS to perform narrow groove welding as long as the welding torch and gas cup used were not derived from PCI products or plans nor modified by WTS or its general manager, Bryant. We agree with defendants' reading of the consent judgment. However, we find this reading is not the message conveyed by the press release.

In its press release, defendants stated, "neither party admitted to any wrongdoing" and that if the case had gone to trial, they are "certain [they would] have been vindicated of all charges." However, the settlement agreement clearly states defendants "unlawfully possessed and used" PCI equipment and technology, and that defendants recognized the "wrongful nature of [their] acts." Defendants further stated in their press release:

We would like to be able to divulge all of the facts of this settlement but the agreement precludes either party from making those facts public. We would welcome a waiver of that confidentiality clause by PCI . . . any time that they are willing to let the public and the industry know the true facts.

The agreement, however, stated the parties have a "continuing confidential obligation with regard to confidential information that is the subject of a Protective Order in the above referenced litigation." In addition, the agreement prohibited a disclosure of "the amount of any payments made or to be made." Except for these limitations, the "parties have no confidential obligation with respect to this Agreement or the subject matter of the dispute which it addresses."

In light of the cumulative effect of defendants' assertions, we find the record contains competent evidence to support the trial court's findings of fact and conclusions of law that defendants violated the consent judgment.

## III.

[3]  Finally, defendants contend the trial court erred in awarding attorney's fees to PCI. We disagree.

The settlement agreement contained a specific "Litigation Costs" provision in which:

> WTS agrees to indemnify PCI for all costs and expenses incurred in furtherance of any litigation brought by PCI to enforce this Agreement in which PCI is awarded . . . relief to preserve the value of the PCI Narrow Groove Proprietary Technology.

In *Nohejl*, this Court said, "[a]bsent express statutory authority for doing so, attorney's fees are not recoverable as an item of damages or costs." 120 N.C. App. at 191, 461 S.E.2d at 12 (citing *Powers v. Powers,* 103 N.C. App 697, 706, 407 S.E.2d 269, 275 (1991)). A trial court "has no authority to award damages [in the form of costs] to a private party in a contempt proceeding." *Green v. Crane,* 96 N.C. App. 654, 659, 386 S.E.2d 757, 760 (1990) (quoting *Glesner v. Dembrosky,* 73 N.C. App. 594, 599, 327 S.E.2d 60, 63 (1985)). We note, however, that the *Nohejl* Court refused to award attorney's fees to the party seeking to enforce a consent judgment because "there was *no express contractual provision* or statutory authority permitting plaintiffs to recover" such fees. 120 N.C. App. at 191-92, 461 S.E.2d at 12 (emphasis added).

This case is distinguishable from both *Green* and *Nohejl.* Neither the consent judgment in *Green* nor in *Nohejl* contained a provision to indemnify a party for costs of enforcing the judgment. Here, the consent judgment contained an express provision in which WTS agreed to pay PCI's costs associated with enforcing the consent judgment.

Therefore, the trial court's order awarding attorney fees to PCI is affirmed.

Affirmed.

Judges JOHNSON and COZORT concur.