IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-825

Filed 06 June 2023

Brunswick County, No. 21CVS671

RICHARD KASSEL, and wife, SUSAN KASSEL, Plaintiffs,

v.

KENNETH RIENTH, and wife, CATHERINE RIENTH, Defendants.

Appeal by defendants-appellants from order entered 14 March 2022 by Judge J. Stanley Carmical in Brunswick County Superior Court. Heard in the Court of Appeals 26 April 2023.

*Law Offices of G. Grady Richardson, Jr., P.C., by Susan Groves Renton and G. Grady Richardson, Jr., for defendants-appellants.*

*The Del Re Law Firm, by Benedict J. Del Re, Jr., for plaintiffs-appellees.*

FLOOD, Judge.

Kenneth and Catherine Rienth ("Defendants") appeal from the 14 March 2022 Order for Specific Performance (the "March Order"). On appeal, Defendants argue the trial court erred by: (1) interpreting the consent order as a standard real estate purchase contract and not an order of the court; (2) inserting words into the unambiguous consent order; (3) making findings of fact that are unsupported by the evidence; and (4) denying their motion for sanctions. After careful review, we find no error.

## I. **Factual and Procedural Background**

On 13 February 2020, Richard and Susan Kassel ("Plaintiffs") entered into a Lease Agreement and Option to Purchase (the "Lease Agreement") Defendants' home (the "Home") located at 3227 St. Andrews Circle SE, Southport, North Carolina. Per the Lease Agreement, Plaintiffs would lease the Home for a term of one year, beginning on 15 February 2020, with the right to purchase the Home at any time prior to the expiration of the Lease Agreement.

On 3 August 2020, a hurricane substantially damaged the Home, resulting in the need to replace the roof. Defendants did not name Plaintiffs as an additional insured party on the Home and had difficulty obtaining insurance proceeds on repairs made by Plaintiffs. Plaintiffs alleged Defendants refused to pay those funds in an attempt to profit from the storm repairs.

On 22 January 2021, Plaintiffs sent Defendants written notice of their intent to close with a cash sale on the Home. Plaintiffs hired Sandra Darby ("Ms. Darby") as their closing attorney, and Defendants hired Zach Clouser ("Mr. Clouser") as their closing attorney. The closing date was scheduled for 14 February 2021, but the parties were unable to close on the sale.

On 16 February 2021, after it became clear to Plaintiffs that Defendants were not going to close on the Home, Plaintiffs filed a Claim of Lien with the Brunswick County Clerk of Court for $13,512.87. This "mechanic's lien" was filed against the Home to secure the costs they expended to repair the roof damaged by the hurricane.

Subsequently, Excel Roofing filed their own mechanic's lien for the roofing work they completed on the Home.

On 8 April 2021, Plaintiffs filed a Complaint in Brunswick County Superior Court for breach of the Lease Agreement, breach of offer to purchase, specific performance, breach of duty of good faith, and damages. In their Complaint, Plaintiffs alleged Clay Collier ("Mr. Collier") contacted Ms. Darby and represented himself as the attorney for Defendants. Plaintiffs alleged the sale of the Home did not take place because Defendants did not procure and provide the documents necessary to close on the Home and continued to demand more money related to the costs of repairing the roof.

In June 2021, after ongoing negotiations, Plaintiffs' current counsel, Benedict Del Re ("Mr. Del Re") drafted a consent order (the "Consent Order") memorializing Plaintiffs' and Defendants' resolution of issues and agreement to close. After drafting the Consent Order, Mr. Del Re sent the Consent Order to Defendants for their approval and signature. Defendants signed the Consent Order on 21 June 2021 and sent it to Plaintiffs for their signature. The Consent Order, which was "the result of arm's length negotiation" between parties, was intended to resolve all claims between the parties and grant Plaintiffs' claim for specific performance. Per the Consent Order, Defendants were responsible for satisfying Excel Roofing's mechanic's lien, and Plaintiffs were responsible for "satisfy[ing] the [mechanic's] lien for $13,512.87." Defendants were also responsible for providing proper execution and delivery of all

documents necessary to complete the closing transaction.  The parties further agreed rent would be abated from the time the Consent Order was filed until the closing was complete.

On 22 June 2021, Mr. Del Re emailed then-attorney for Defendants, Mr. Collier, summarizing what Defendants needed to complete in order to close.  It is unclear from the Record whether Mr. Collier responded to this email, but Mr. Del Re sent a follow up email on 24 June 2021, stating:

> This is just not working. The mortgage company is going to back out of the financing which will cause further delay . . . . I have no order, nor lien cancellation, no response on [Plaintiffs'] lien payment.

On 28 June 2021, Mr. Clouser sent the seller documents and the receipt for Excel Roofing's mechanic's lien payoff to Mack Hewett ("Mr. Hewett"), who took over closing responsibilities from Ms. Darby on behalf of Plaintiffs.  Later that afternoon, the lender emailed Mr. Clouser requesting a list of items the lender needed "ASAP" to secure financing.  Mr. Clouser responded that he was not doing the closing, and that last he heard, Mr. Hewett was responsible for the closing.

On 7 July 2021, Judge Disbrow signed the Consent Order, and it was filed with the clerk the same day.  The Consent Order did not specify the date for closing, but it stipulated closing was to occur sixty days after the Consent Order was filed, which

would have been 7 September 2021.[1] Defendants sent a request for a closing date but were told Plaintiffs were waiting on lender confirmation. Plaintiffs did not communicate a closing date to Defendants, but Plaintiffs worked with the lender through the month of August to complete the transaction. On 9 August 2021, Plaintiffs emailed Mr. Hewett that they had "scheduled a closing for [12 August 2021,]" but due to final documents being "held-up," closing on this date would not be feasible. It is unclear from the Record who was responsible for holding up these documents.

On 8 September 2021, Mr. Del Re emailed Mr. Collier to schedule the closing date for 10 September 2021. Mr. Collier responded, "I am not acting as [sellers'] attorney for the closing; that is [Mr.] Clouser who, according to [Defendants] has tried to contact [Mr. Hewett] and got no response. The deadline for closing was yesterday."

On 9 September 2021, Mr. Clouser emailed Mr. Del Re and Mr. Hewett the following: "As of last evening I was told not to release the seller documents because the deadline expired as far as the closing date. I just got off the phone with [Mr. Hewett] and let him know, since I received an additional email today that stated the same." On 10 September 2021, Mr. Clouser sent another email that stated: "[Plaintiffs] told me to not release documents or order an updated payoff statement. They said the date that closing was required expired." The parties attempted to

---

[1] Sixty days after 7 July 2021 would have been 5 September 2021 but this day was a Sunday and the following day was Labor Day.

resolve issues related to the closing but were unable to reach a resolution.

On 1 November 2021, Plaintiffs filed a Motion for Clarification and a Motion for Relief from Final Entry of Judgment/Order under Rule 60 of the North Carolina Rules of Civil Procedure (the "Rule 60 Motion"), requesting the trial court extend the closing date. In their Motion, Plaintiffs alleged the delay in closing was due to Defendants' delay in "consenting to inspections and providing verification of rents paid by Plaintiffs, delays in loan commitment due to title issues surrounding the cancellation of a mechanic's lien in the Clerk's office (official record), unexpected delays, and other delays not the fault of the Plaintiffs[.]"

On 20 December 2021, Defendants filed a Motion to Enforce the Consent Order, which included a motion to eject Plaintiffs from the Home and restore possession to Defendants. Defendants further requested an award of Rule 11 sanctions (the "Rule 11 Motion") against Plaintiffs and Mr. Del Re for the Rule 60 Motion. In response, Plaintiffs filed an Objection to Defendants' Motion and a Countermotion for Specific Performance.

On 14 March 2022, Judge Carmical entered the March Order granting Plaintiffs' Motion for Specific Performance and denying Defendants' Rule 11 Motion. The March Order concluded as a matter of law that the Consent Order "was intended to be a recital of the parties' agreement . . . [and] should be considered a court-approved contract and be subject to the normal rules of contract interpretation." The trial court further concluded:

> Where a contract for the sale of real property does not include an explicit provision that time is of the essence for execution of the contract terms, the 'the dates stated in an offer to purchase and contract agreement serve on as guidelines, and such dates are not binding on the parties.'

The trial court did not rule on the Rule 60 Motion filed by Plaintiffs.

On 12 April 2022, Defendants filed timely notice of appeal.

## II. Jurisdiction

This Court has jurisdiction to hear this appeal as a final order from a superior court pursuant to N.C. Gen. Stat. § 7A-27(b) (2021).

## III. Analysis

## A. Consent Order

Defendants' first two issues on appeal are whether the trial court erred in (1) interpreting the Consent Order as a standard real estate contract and not a court order and (2) rewriting the Consent Order's explicit deadline for Plaintiffs to close on the purchase of the Home by allowing Plaintiffs "a reasonable time to perform." To address these issues, we are required to determine whether the Consent Order is a court-approved contract subject to regular principles of contract interpretation, or an order of the court enforceable only through contempt powers. Traditionally, consent orders have been considered "merely a recital of the parties' agreement and not an adjudication of rights. This type of judgment does not contain findings of fact and conclusions of law because the judge merely sanctions the agreement of the parties." *Rockingham Cnty. DSS ex rel. Walker v. Tate*, 202 N.C. App. 747, 750, 689 S.E.2d

913, 915 (2010). The question before us, therefore, is whether the inclusion of findings of fact and conclusions of law in the Consent Order transformed it from a court-approved recitation of the parties' agreement into a binding order of the court subject to enforcement only through contempt powers. In answering this question, we first examine diverging views of this State's jurisprudence regarding consent orders.

North Carolina's jurisprudence regarding consent orders has long agreed "the general rule is that a consent judgment is the contract of the parties entered upon the record with the sanction of the court." *Handy Sanitary Dist. v. Badin Shores Resort Owners Ass'n, Inc.*, 225 N.C. App. 296, 298, 737 S.E.2d 795, 798 (2013); *see also In re Smith's Will*, 249 N.C. 563, 568–69, 107 S.E.2d 89, 93–94 (1959) (consent judgment was nothing more than a contract not punishable by contempt); *Yount v. Lowe*, 288 N.C. 90, 96, 215 S.E.2d 563, 567 (1975) ("The decisions of this State have gone very far in approval of the principle that a judgment by consent is but a contract between the parties . . . ."); *Crane v. Greene*, 114 N.C. App. 105, 441 S.E.2d 144 (1994); *Potter v. Hileman Lab'y, Inc.*, 150 N.C. App. 326, 564 S.E.2d 259 (2002); *Duke Energy Corp. v. Malcolm*, 178 N.C. App. 62, 630 S.E.2d 693 (2006).

There appears, however, to be ansplit in our jurisprudence in how a court determines the proper remedy for a breach or violation of a consent order. One line of cases has concluded that, when a consent order contains findings of fact and conclusions of law, it is an order of the court only actionable through contempt powers. In *Potter*, we reasoned:

> A consent judgment is the contract of the parties entered upon the record with the sanction of the court. Thus, it is both an order of the court and a contract between the parties. If a consent judgment is merely a recital of the parties' agreement and not an adjudication of rights, it is not enforceable through the contempt powers of the court, but only through a breach of contract action.

150 N.C. App. at 334, 564 S.E.2d at 265 (citations omitted). In *Potter*, we determined the consent order was not a "mere recital of the parties'" agreement—and was an order of the court—because the consent order contained findings of fact and an order based on those findings. *Id.* at 334, 564 S.E.2d at 265. In the opposite vein, in *Ibele v. Tate*, we found a consent order was *not* an order of the court because it did not contain findings of fact or conclusions of law but was merely a recitation of the parties' settlement agreement. 163 N.C. App. 779, 781, 594 S.E.2d 793, 795 (2004).

In another line of cases, our jurisprudence has definitively held consent orders are court-approved contracts subject to principles of contract interpretation, not contempt powers, without indicating whether the consent order contained findings of fact. *Cf. Duke Energy Corp. v. Malcolm* 178 N.C. App. 62, 65 630 S.E.2d 693, 695 (2006) ("Consent judgments delineating easement rights are foremost contracts."); *see also Reaves v. Hayes*, 174 N.C. App. 341, 343–44, 620 S.E.2d 726, 728–29 (2005) ("A consent judgment is a contract between the parties entered upon the records of the court with the approval and sanction of a court of competent jurisdiction. It is construed as any other contract. . . . Thus, a consent judgment '*must* be enforced according to contract principles.'") (emphasis added); *Hemric v. Gore,* 154 N.C. App.

393, 397, 572 S.E.2d 245, 257 (2002); ("A consent judgment is a contract between the parties entered upon the record with the sanction of the trial court and is enforceable by means of an action for breach of contract and not contempt."); *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) ("A consent judgment is a court-approved contract subject to the rules of contract interpretation.").

In a third line of cases, this Court reviewed the four-corners of the consent judgment at issue to determine whether it was more appropriately considered a court-approved contract or an order of the court. In *Crane*, this Court considered whether the trial court merely approved the agreement of the parties or went beyond the original agreement and made a judicial determination of the parties' respective rights. 114 N.C. App. at 106, 441 S.E.2d at 144–45 ("In the ordinary case, when a court merely approves the agreement of the parties and sets it out in the judgment, a judicial determination is obviated, and the judgment is nothing more than a contract which is enforceable only by means of an action for breach of contract."). Even though the consent order at issue did not contain findings of fact or conclusions of law, the Court did not conclude this was dispositive of the consent order being a court-approved contract. *Id.* at 107, 441 S.E.2d at 145. Instead, the *Crane* Court reasoned the introduction to the consent order *"clearly"* stated its purpose:

> THIS MATTER coming on before the undersigned Superior
> Court Judge at the October 8, 1990 Civil Session of the
> Avery County Superior Court, and it appearing to the
> Court *that the parties, acting through their attorneys and*

> *pro se respectively, have agreed to resolve all matters* pertaining to the above-captioned action as set forth below.
>
> THEREFORE, IT IS HEREBY, ORDERED, ADJUDGED AND DECREED.

*Id.* at 106–107, 441 S.E.2d 145 (second emphasis added). We found the consent judgment was a court-approved contract because the judgment, "[o]n its face," did not reflect a determination by the trial court of either issues of fact or conclusions of law, but merely recited the parties' agreement. *Id.* at 106–107, 441 S.E.2d at 145 ("Viewed from its four corners, it is clear that the order . . . is merely a recital of the parties' agreement and not an adjudication of rights.").

In *Nohejl v. First Homes of Craven County Inc.*, this Court held, based on "*the facts of [the] case*," the trial court had the power to enforce a consent order through contempt. 120 N.C. App. 188, 189, 461 S.E.2d 10, 11 (1995) (emphasis added). The consent order provided it could be enforced "by specific performance, contempt, or any method that may be available." *Id.* at 189, 461 S.E.2d at 11.[2] Distinguishing from the consent order at issue in *Crane*, the *Nohejl* Court concluded the consent order *was* an order of the court because it was entered by the trial court and contained written findings of fact and an order based on those findings. *Id.* at 190–91, 461 S.E.2d at 12.

---

[2] It is worth noting, the plaintiffs in *Nohejl* filed a motion to hold the defendant in contempt based on the consent order. It seems, based on the wording of the consent order at issue, the Court would have also affirmed an order for specific performance had the plaintiffs requested and been granted specific performance by the trial court. This Court determined the appropriate remedy based on the plain-language of the Consent Order, which lends further support to our conclusion that findings of fact alone are not dispositive.

In *PCI Energy Services, Inc. v. Wachs Technology Services, Inc*, this Court once again considered whether a consent judgment that contained findings of fact and conclusions of law was a court-approved contract or an order of the court. 122 N.C. App. 436, 439, 470 S.E.2d 565, 566 (1996). We found the procedural history of the case to be significant, specifically noting the same trial judge who entered the consent order had previously entered a preliminary injunction in the case. *Id.* at 439, 470 S.E.2d at 567. We also found the language of the consent order to be significant. *Id.* at 439, 470 S.E.2d at 567. Similar to *Crane*, the consent order at issue in *PCI Energy* stated, "*the parties have entered into a Settlement Agreement* which can be made the subject of this Consent Agreement." *Id.* at 439, 470 S.E.2d at 567 (emphasis added). The trial court, however, went a step further than that in *Crane* and "explicitly 'approve[d,] . . . adopt[ed,] . . . incorporate[ed] and . . . made an enforceable judgment of the Court,' the terms of the settlement agreement." *Id.* at 439, 470 S.E.2d at 567 (alterations in original). We ultimately held, "[b]y 'adopting' and 'incorporating' the settlement agreement, the [trial] court transformed the parties' agreement into the [trial] court's own determination of the parties' respective rights and obligations[,]" and "did not merely 'rubber stamp' the parties' private agreement[.]" *Id.* at 439–40, 470 S.E.2d at 567.

*Nohejl*, *Crane*, and *PCI Energy* lend support to our conclusion that findings of fact and conclusions of law are not dispositive of whether a consent order is a court-approved contract enforceable through a breach of contract action, or an order of the

court enforceable through contempt powers. Instead, a court must consider whether, on its face, the order goes beyond a "mere[] recital" of the parties' agreement, *see Crane*, 114 N.C. App. at 107, 441 S.E.2d at 145, the facts of each individual case, *see Nohejl*, 120 N.C. App. at 189, 461 S.E.2d at 11, and the procedural history surrounding the litigation. *See PCI Energy,* 122 N.C. App. at 439, 470 S.E.2d at 567.

Turning to the case *sub judice*, we conclude the above-referenced considerations weigh in favor of the Consent Order being a court-approved contract subject to standard rules of contract interpretation. First, the plain language of the Consent Order shows the court "merely approve[d] the agreement of the parties and set[] it out in the judgment." *See Crane*, 114 N.C. App. at 106, 441 S.E.2d at 145. Similar to the consent order at issue in *Crane*, the Consent Order in this case states, "*the parties have reached an agreement* regarding resolution of the issues plead in the Complaint and Counterclaim . . . ." (emphasis added). The plain language of the Consent Order affirms that it is the result of a mutual agreement reached by the parties. The Consent Order was not an adjudication of parties' respective rights, but rather was the result of an "arm's length negotiation" between parties.

Second, based on the facts of this case, it appears that Judge Disbrow approved the agreement reached by the parties, and did not make a judicial determination of the parties' respective rights. *See Crane*, 114 N.C. App. at 106, 441 S.E.2d at 145. Judge Disbrow signed the Consent Order after it had been drafted and signed by the parties and notarized. Judge Disbrow did not "adopt" or "incorporate" the terms of

the settlement agreement into Consent Order; he signed the Consent Order exactly as it was presented to him by the parties. *See PCI Energy,* at 439, 470 S.E.2d at 567. Notably, Defendants had already signed and notarized the Consent Order on 21 June 2021 before it was presented to Judge Disbrow. Judge Disbrow could not have "transformed the parties' agreement" into his "own determination of the parties' respective rights and obligations" without sending it back to Defendants for approval and signature. *See id.* at 439, 470 S.E.2d at 567.

Third, from our review of the language of the Consent Order, it appears that Judge Disbrow essentially "rubber stamped" the agreement reached by the parties. *See PCI Energy*, 122 N.C. App. at 439, 470 S.E.2d at 566. The first six findings of fact identify the parties, summarize the Complaint, and summarize the option to purchase. Finding of Fact 7 explains the "terms of the agreement" reached by the parties, including the sixty days to close provision. The remaining findings of fact are standard contract provisions including: a merger clause, representations of warranties, effect of the agreement on successors and assigns, modifications, and choice of law. The Consent Order lacks any evidence that Judge Disbrow "transformed" it by "incorporating," or "adopting" provisions of the parties' agreement into his own determination of their respective rights. *See PCI Energy*, 122 N.C. App. at 439–40, 470 S.E.2d at 567. The Consent Order *was* the parties' agreement in its entirety.

Although the Consent Order uses language that could imply the trial court's

independent insertion of findings of fact or conclusions of law—e.g., "upon greater weight of the evidence and the Record," "entry of judgment," "concludes as a matter of law," "it is ordered, adjudged and decreed," and "hereby made an Order of the Court"—such terminology does not outweigh the overwhelming evidence that the trial court merely approved the agreement of the parties and did not make a judicial determination of their respective rights. *See Crane*, 114 N.C. App. at 107, 441 S.E.2d at 145. The language from the Consent Order is not unlike that seen in *Crane*, where this Court used the terms "ordered, adjudged and decreed" and concluded the consent order was not an adjudication of the parties' rights. *See Crane*, 114 N.C. App. at 107, 441 S.E.2d at 145.

Not only does our jurisprudence indicate that the Consent Order here is a court-approved contract, but likewise, Defendants' filing also indicates they viewed it similarly. Defendants filed a Motion to Enforce the Court Order, not a motion to hold Plaintiffs in contempt for failing to comply with the Consent Order. Thus, Defendants themselves likely viewed the Consent Order as a real estate contract between the parties, not a court order enforceable through contempt powers. At trial, Defendants *acknowledged* that they could have filed a motion for contempt, and that they ultimately decided not to because it would not have afforded them any relief.

Therefore, we find the Consent Order was a court-approved contract subject to the usual principles of contract interpretation. *See Reaves*, 174 N.C. App. at 343, 620 S.E.2d at 728.

## B. Modification of the Consent Order

Defendants next argue the trial court erred by inserting Plaintiffs' requested language of "reasonable time to perform" into the unambiguous Consent Order. The trial court, however, did not "insert" language into the Consent Order as Defendants contend. The trial court *interpreted* the Consent Order as allowing a "reasonable time to perform" because the Consent Order did not have a "time is of the essence" clause. Having determined the Consent Order was a court-approved contract subject to principles of contract interpretation, we hold the trial court's interpretation was correct.

"The trial court's determination of whether the language in a consent judgment is ambiguous . . . is a question of law and therefore our review of that determination is *de novo*." *Hemric v. Groce*, 169 N.C. App. 69, 75, 609 S.E.2d 276, 282 (2005). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

> As a general rule, the language of a contract should be interpreted as written; however, there is a well-settled exception, the "reasonable time to perform rule," that applies to contracts for the sale of real property. With respect to these realty sales contracts, it has long been held that in the absence of a "time is of the essence" provision, time is not of the essence, the dates stated in an offer to purchase and contract agreement serve only as guidelines, and such dates are not binding on the parties.

*Harris v. Steward*, 193 N.C. App. 142, 146, 666 S.E.2d 804, 807 (2008) (citations

omitted).

Here, the Consent Order, which pertains to the sale of real property, includes a provision that closing would take place sixty days after the filing of the Consent Order. No provision for, or indication that "time is of the essence" was included in the Consent Order.

Thus, the trial court did not err by interpreting the Consent Order, absent a "time is of the essence clause," as allowing closing "within a reasonable time." *See Harris*, 193 N.C. App. at 146, 666 S.E.2d at 807.

### C. Competent Evidence to Support Specific Performance

Defendants also argue the trial court lacked competent evidence to support its March Order. We disagree.

> The sole function of the equitable remedy of specific performance is to compel a party to do that which in good conscience he ought to do without court compulsion. The remedy rests in the sound discretion of the trial court and is conclusive on appeal absent a showing of a palpable abuse of discretion.

*Munchak Corp. v. Caldwell*, 46 N.C. App. 414, 418, 265 S.E.2d 654, 657 (1980) (citations omitted). "A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Greenshields, Inc. v. Travelers Prop. Cas. Co. of Am.*, 245 N.C. App. 25, 31, 781 S.E.2d 840, 844 (2016) (citation omitted).

"In reviewing a trial [court]'s findings of fact, we are strictly limited to

determining whether the [court's] underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *Reeder v. Carter*, 226 N.C. App. 270, 274, 740 S.E.2d 913, 917 (2013) (citation and internal quotation marks omitted). "Findings of fact are conclusive if supported by competent evidence, irrespective of evidence to the contrary." *Wiseman Mortuary, Inc. v. Burrell*, 185 N.C. App. 693, 697, 649 S.E.2d 439, 442 (2007) (citation omitted). The trial court does not need to find that *all* the facts support a specific conclusion of law; rather it must find facts necessary to establish the cause of action, that may lead to the cause of action failing, or necessary to establish a defendant's affirmative defense. *Carolina Mulching Co. v. Raleigh-Wilmington Invs. II, LLC*, 378 N.C. 100, 105, 851 S.E.2d 496, 500 (2021)

"The party claiming the right to specific performance must show the existence of a valid contract, its terms, and either full performance on his part or that he is ready, willing and able to perform." *Ball v. Maynard*, 184 N.C. App. 99, 107, 645 S.E.2d 890, 896 (2007) (citation omitted).

### 1. Finding of Fact 1

First, Defendants argue Finding of Fact 1 incorrectly refers to only two of the six causes of action set forth in Plaintiffs' Complaint, which prevents a correct interpretation of the Consent Order and an understanding of what it was intended to resolve.

Finding of Fact 1 provides:

> 1. Plaintiffs filed an action for Breach of Contract and Specific Performance to enforce an offer to Purchase Contract for real estate owned by Defendants dated February 14, 2020 located at 3227 St. Andrew's Circle in Southport, N.C. 28462.

Plaintiffs' Complaint asserted six causes of action including: breach of the Lease Agreement, breach of offer to purchase and contract, specific performance, reasonable attorney's fees pursuant to N.C. Gen. Stat. § 46A-3, punitive damages pursuant to N.C. Gen. Stat. § 1D-1, and breach of duty to act in good faith. The Consent Order itself described only an action for "Breach of Contract, Specific Performance, and *other claims, equitable remedies and monetary damages . . . .*" (emphasis added). The claims relevant to interpreting the Consent Order and what it was intended to resolve are breach of contract and specific performance.

Thus, there was no error in omitting the remaining four claims, and if there was error, it was harmless because the March Order adequately establishes the relevant causes of action. *See Carolina Mulching Co.*, 378 N.C. at 106, 851 S.E.2d at 500.

## 2. Findings of Fact 4 and 5

Second, Defendants argue Findings of Fact 4 and 5 incorrectly interpret the Consent Order, state facts that are not grounded in law, and do not address the proper legal standard to be applied in this case. Defendants specifically argue Finding of Fact 4 misleadingly omits that the findings of fact in the Consent Order were made

"upon greater weight of the evidence."

Findings of Fact 4 and 5 provide:

> 4. The [Consent] Order at issue in this case was prefaced with "[t]he Court finds that the parties have reached an agreement regarding the resolution of the issues plead in the Complaint and Counterclaim …" and made its findings of conclusions based "upon the stipulations of counsel and consent of the parties." The [Consent] Order does not include a provision that it is enforceable through the contempt powers of the court.

> 5. There is no indication that there was a hearing where evidence was taken, or that independent findings or conclusions of law were made by the Judge. Defendants state in their [brief] that "Plaintiffs and Defendants reached an agreement settling all matters, claim, disputes and actions in the Lawsuit by mutual agreement and entry into the Consent Order." In addition, the Defendants state that Plaintiffs' attorney drafted all of the provisions of the [Consent] Order and that Defendants did not change any of those terms.

Finding of Fact 4 quotes language directly from the Consent Order. The omission that the findings were made "upon the greater weight of the evidence" does not render the finding unsupported by competent evidence. The trial court heard sufficient evidence showing no hearing was held on the Consent Order, Judge Disbrow signed the Consent Order after it had been drafted and signed by the parties, Defendants' brief states the parties reached an agreement settling all matters, and Mr. Del Re drafted the terms of the Consent Order. Based on this overwhelming evidence, we hold the parties intended the Consent Order to be a contract. The trial court gave more weight to "upon the stipulations of counsel and consent of the parties"

than it did "upon greater weight of the evidence," which is not an error. *See Burrell*, 185 N.C. App. at 697, 649 S.E.2d at 442.

Findings of Fact 4 and 5, therefore, are supported by the language of the Consent Order. *See Reeder*, 226 N.C. App. at 274, 740 S.E.2d at 917.

### 3. Finding of Fact 6

Third, Defendants argues the trial court erred in Finding of Fact 6 because Defendants did not make any statements agreeing that the Consent Order was meant to be a court-approved contract.

Finding of Fact 6 provides:

> 6. The July 7, 2021 [Consent] Order on its face, along with the statements of both parties, demonstrate that the [Consent] Order was intended to be a recital of the parties' agreement, with no adjudication on the part of the Court. Therefore, the [Consent] Order should be considered a court-approved contract and be subject to the normal rules of contract interpretation.

While Defendants' counsel may have stated "it's not a contract. It's an order[,]" Finding of Fact 6 states that the "statements of both parties, *demonstrate* that the [Consent] Order was intended to be a recital of the parties' agreement, with no adjudication on the part of the Court." (emphasis added). In Defendants' motion to enforce the Consent Order they stated: "Plaintiff[s] and Defendants reached an agreement," the Consent Order was drafted with "all terms and provisions," and the Consent Order was signed by Defendants prior to receiving Judge Disbrow's signature. Taken together, these representations by Defendants show both parties

- 21 -

intended the Consent Order to be a court-approved contract.

Accordingly, Finding of Fact 6 is supported by competent evidence. *See Reeder*, 226 N.C. App. at 274, 740 S.E.2d at 917.

4. Findings of Fact 9 and 15

Fourth, Defendants argue Finding of Fact 9 "erroneously describes the email sent by [Mr. Del Re] on 8 September 2021 . . . as 'confirming' the closing date." Defendants further argue Findings of Fact 9 and 15 are not supported by competent evidence because Defendants did not refuse to tender a deed at closing.

Findings of Fact 9 and 15 provide:

> 9. The [Consent] Order was entered on July 7, 2021, meaning the 60-day deadline expired on September 7, 2021. On September 8, 2021, Plaintiffs sent an email to Defendants confirming a closing date of September 10, 2021. Defendants responded that the deadline for closing was the day before. The sellers never tendered the deed. Plaintiffs allege, and Defendants have not disputed, that the mortgage company was ready to fund the loan.
>
> . . . .
>
> 15. The [Consent] Order did not provide "time was not [sic] of the essence" and Plaintiffs were ready to tender the balance of the purchase price and close within a reasonable period of time. Defendants then refused to tender the deed at settlement, in breach of the [Consent] Order.

The email sent on 8 September 2021 was sent with the intent of confirming the closing date. Plaintiffs may have been incorrect about the date of the closing, but that does not change the intent behind the 8 September 2021 email, which was to

confirm a closing date of 10 September 2021.

As for Defendants refusing to tender the deed, this is also supported by the evidence. The portion of Finding of Fact 9 that states, "Defendants never tendered the deed[,]" is supported by email evidence that Defendants did not tender the deed. Plaintiffs were prepared to go forward with the closing, albeit late, but Defendants, either directly or through counsel, refused to tender the deed.

Thus, Findings of Fact 9 and 15 are supported by competent evidence. *See Reeder*, 226 N.C. App. at 274, 740 S.E.2d at 917.

### 5. Finding of Fact 10

Fifth, Defendants argue the trial court erred in Finding of Fact 10 because it incorrectly states a conclusion of law as fact. Specifically, Defendants argue that the finding "[Plaintiffs] are entitled to specific performance" is a conclusion of law, not a finding of fact. Further, Defendants argue the finding incorrectly states delays were the fault of Defendants. Finding of Fact 10 states:

> 10. Plaintiffs allege in their filings that the closing date was set by the Lenders and Plaintiffs' closing attorney and that they were ready to tender the balance of the purchase price and receive the deed to the property. There is no indication, and it is not alleged by Defendants, that Plaintiffs are not "ready, willing, and able to perform." Plaintiffs have demonstrated that they are entitled to specific performance and that the sale of the property should be completed as intended by the [Consent] Order. 10. [sic] Plaintiffs allege that "due to delays in [D]efendants consenting to inspections and providing verification of rents paid by the Plaintiffs, delays in loan commitment due to title issues surrounding the cancellation of the

- 23 -

mechanic's lien in the clerk's office, unexpected delays and other delays not the fault of [P]laintiffs[,]" they were not ready for closing until September 10, 2021.

"If a finding of fact is essentially a conclusion of law . . . it will be treated as a conclusion of law which is reviewable [*de novo*] on appeal." *See Burrell*, 185 N.C. App. at 697, 649 S.E.2d at 442.

At trial, Plaintiffs were able to show the existence of a valid contract and its terms, and that they were ready, willing, and able to perform. As we previously concluded, absent a "time is of the essence" clause, Plaintiffs had a "reasonable time to perform," and their two-day delay in closing does not render them any less willing and able to perform. *See Ball*, 184 N.C. App. at 107, 645 S.E.2d at 896. The conclusion of law that Plaintiffs were entitled to specific performance, therefore, was not an error. *See Burrell*, 185 N.C. App. at 697, 649 S.E.2d at 442.

Moreover, the remaining portions of Finding of Fact 10 are not independent findings made by the trial court but are merely a summary of the arguments made by Plaintiffs in their motion, and the finding is supported by Plaintiffs' motion.

Accordingly, Finding of Fact 10 is supported by competent evidence. *See Reeder*, 226 N.C. App. at 274, 740 S.E.2d at 917.

### 6. Findings of Fact 11, 12, 13, and 14

Sixth, Defendants argue competent evidence refutes Findings of Fact 11, 12, 13, and 14 because Defendants did not make "time is of the essence" arguments, the delays in closing were Plaintiffs' fault, and the focus on "reasonable" or "of the

essence" was reached under a misapprehension of the law. Defendants further argue Findings of Fact 11, 12, and 13 are not supported by the evidence because there were no "required prerequisites," and any delays were Plaintiffs' fault. We disagree.

The challenged Findings of Fact state:

> 11. Defendants allege that the time was "of the essence" in the contract and that because the Plaintiffs did not close on or before September 7, 2021, they were not in compliance with the terms of the [C]onsent [O]rder. Defendants do not contend that the delay was the fault of the Plaintiffs, Defendants contend there was a delay in closing and because the mandatory closing deadline was missed, Defendants are entitled to refuse to close on the contract.

> 12. The [Consent] Order does not contain an explicit "time is of the essence provision[.]" The provision at issue in the parties' dispute is accompanied by a list of required prerequisites to complete the contract that depend on the actions of third parties, such as the Lender. Because there is no "time is of the essence provision" the "reasonable time to perform rule" applies to the requirements of the [Consent] Order. Plaintiffs have alleged several reasons outside of their control as to why their ability to close was delayed, and Defendant[s] had not contested those reasons. Some of the reasons alleged by Plaintiffs are due to Defendants [sic] own failure to act as needed to effectuate the intent of the [Consent] Order.

> 13. The delay in closing was three (3) days past the 60-day deadline period, not a significant amount of time. Plaintiffs have adequately demonstrated that they did not "delay or tarry" in complying with the contract and that they complied within a reasonable period of time.

The Consent Order provided:

> 7. That the parties have reached a settlement of the dispute in this matter with the substantive terms of the agreement

as follows:

a. Defendants, by and through Counsel will, within Five (5) days of the entry of this Order, satisfy the lien at the Office of the Clerk of Court filed by Excel Roofing, secure a notarized Affidavit from the lien claimant that the lien has been satisfied by an authorized agent of Excel Roofing to be filed with the Clerk of Court in the Lien Docket, and secure a further Subcontractor's notarized lien waiver of all liens to be provided to the mortgage lender of the Plaintiff[s]. . . from the lien holder.

b. That the Plaintiffs will, within Five (5) days of the entry of this Order, satisfy the lien for $13,512.87 filed February 16, 2021 in 21 M 59 at the Office of the Clerk of Court and provide a notarized Affidavit from the Plaintiff (or entity) that the lien has been satisfied by an authorized agent of Plaintiff to be filed with the Clerk of Court in the Lien Docket, and secure a further affidavit and General Lien Waiver of all liens to be provided to the mortgage lender of the Plaintiff . . . to the Defendants [sic].

c. That on a date to be set by the Plaintiff's Lender in conjunction with the Plaintiff's Attorney, not to exceed 60 days from the entry of the Order, Plaintiff[s] will tender the balance of the $337,500 purchase price being $312,500.00 with $25,000 having been credit [sic] to buyers as a deposit having been received, with adjustments for insurance (Flood, Hazard, Wind and Hail), County and City taxes and property owners due, other prorations and any other regular and customary expense adjustments, and any additional costs and expenses for document preparation, title insurance, revenue stamps any other regular and customary expenses paid by the buyer and seller for closing of real property in Brunswick County, State of North Carolina. That Defendants, on said date, will provide the proper execution and delivery to the closing attorney of all documents *necessary to complete the transaction contemplated by this Contract, including the deed, settlement statement, deed of trust and other loan or conveyance documents and waivers. That all parties will*

> *cooperate in the requests of the Lender for documents, assignments of insurance, etc. and any other forms necessary to close the loan and facilitate the closing to include the permission for any necessary inspections for the loan and the property closing.* That the transfer of the property will be free of all liens and encumbrances by a general Warranty Deed, allowing Plaintiff's [sic] lender a First secured position in the property. That further rent is abated.

(emphasis added).

Defendants may not have raised "time is of the essence" arguments in their motions or at the hearing, but in the Record, there are two emails Defendants sent Plaintiffs where Defendants stated, "time was of the essence." First, in an email sent from Defendants' counsel to Mr. Del Re on 27 October 2021, Defendants' counsel stated: "If you have any serious and meaningful offer on behalf of the [Plaintiffs] to resolve this matter, let me know. <u>Time is of the essence.</u>" (emphasis in original). In this context, we read "time is of the essence" to refer to Mr. Del Re's response to the email rather than the performance of the contract being "of the essence." The second communication, however, does support the trial court's findings that Defendants alleged time was of the essence to fulfill the Consent Order. In the second correspondence, a settlement communication sent from Defendants' counsel to Mr. Del Re on 29 October 2021, Defendants' counsel stated, "[t]he [Plaintiffs] pay the lump sum of [redacted] <u>time being of the essence</u> . . . ." (emphasis in original). This communication lends support to the trial court's finding that Defendants did in fact allege "time was of the essence[.]" To be clear, the Consent Order did not contain a

"time is of the essence" clause and Finding of Fact 11 does not contradict this. Finding of Fact 11 only states Defendants argued "time was of the essence," which we conclude was supported by competent evidence for the reasons explained. *See Reeder*, 226 N.C. App. at 274, 740 S.E.2d at 917.

As for the "prerequisites," it is clear from the plain language of the Consent Order that both parties were required to fulfill certain obligations prior to closing. Defendants were required to satisfy the mechanic's lien filed by Excel Roofing, Plaintiffs were responsible for satisfying the mechanic's lien they had filed on the Home, and both parties were responsible for procuring various documents and cooperating with the lender. This challenged portion of the Finding of Fact 12, therefore, is supported by competent evidence. *See Reeder*, 226 N.C. App. at 274, 740 S.E.2d at 917.

Additional evidence indicates both parties were responsible for the delay. The Record shows the lender requested a thirty-day extension on the purchase contract. Plaintiffs emailed Mr. Hewett on 9 August 2021 advising him that Plaintiffs had scheduled a closing for 12 August 2021, but this would not be able to occur as the lender could not finalize the loan documents due to a delay in the Property Owners Association providing a statement of dues paid on the Home. On 11 August 2021, Plaintiffs stated in an email to their counsel, "[n]ot to my surprise—title issues are holding us up." Moreover, on 4 October 2021, Mr. Del Re sent Defendants' counsel an email, which stated:

> Let me know you received the documents showing that the loan was approved and ready to close in September. Those emails also reflect that the settlement lawyer is the one who picked the date of closing pursuant to the [C]onsent [O]rder.

While the email referencing the lender-set closing date was omitted from the Record, Defendants' counsel's response is further evidence such an email existed. In response to the aforementioned email sent on 4 October 2021, Defendants' counsel represented:

> Confirming that I did receive your fax and reported to [Defendants] via email that it appeared the delay this time was not caused by you[] or [Plaintiffs] and that is appears [Plaintiffs] had funding to close.

The portions of Findings of Fact 11, 12, and 13 that state delays were not the fault of Plaintiffs, therefore, are supported by competent evidence. *See Reeder*, 226 N.C. App. at 274, 740 S.E.2d at 917.

Finally, Defendants argue the trial court erred in Findings of Fact 11, 12, and 13 because the focus on the timing being "reasonable" or "of the essence" was reached as a misapprehension of law by treating the Consent Order as a real estate contract. Having affirmed the trial court's conclusion that absent a "time is of the essence" clause, Plaintiffs were entitled to a reasonable amount of time to perform, we conclude these findings are supported by competent evidence. *See Reeder*, 226 N.C. App. at 274, 740 S.E.2d at 917.

Accordingly, we hold the trial court did not abuse its discretion in granting Plaintiffs' Motion for Specific Performance because the trial court made adequate

findings of fact showing Plaintiffs were ready, willing, and able to perform according to the Consent Order. *See Greenshields*, 245 N.C. App. at 31, 781 S.E.2d at 844; *Ball*, 184 N.C. App. at 107, 645 S.E.2d at 896.

## D. Motion for Sanctions

Lastly, Defendants argue the trial court erred by denying their Rule 11 Motion.[3] Defendants filed the Rule 11 Motion alleging Plaintiffs' Rule 60 Motion was "not well-grounded in fact, not warranted by existing law, and/or was interposed for the improper purposes of annoying Defendants and their counsel, causing unnecessary delay . . . and needlessly increasing the Defendants' cost of litigation." We disagree.

"This Court exercises a de novo review of the question of whether to impose Rule 11 sanctions." *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365 (1994). A Rule 11 analysis includes three parts: whether the document is (1) factually sufficient; (2) legally sufficient; and (3) filed for an improper purpose. *Id.* at 635, 442 S.E.2d at 365. "A violation of any one of these requirements mandates the imposition of sanctions under Rule 11." *Id.* at 635, 442 S.E.2d at 365. "The totality of the circumstances determine[s] whether Rule 11 sanctions are merited." *Williams v.*

---

[3] Plaintiffs seemingly withdrew their Rule 60 Motion during the hearing and requested the trial court, instead, grant an order of specific performance. The trial court did not rule on the Rule 60 Motion but granted the request for specific performance and denied Defendants' Rule 11 Motion. Finding no case law indicating a withdrawn motion renders a motion for sanctions moot, we review the merits of Defendants' argument.

*Hinton*, 127 N.C. App. 421, 423, 490 S.E.2d 239, 241 (1997).

"In determining factual sufficiency, we must decide '(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact.'" *In re Thompson*, 232 N.C. App. 224, 230, 754 S.E.2d 168, 173 (2014) (citation omitted). As for legal sufficiency, this Court is required to first "look at 'the facial plausibility of the [motion] and *only then*, if the [motion] is implausible under existing law, to the issue of whether to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, the [motion] was warranted by existing law.'" *Id.* at 230, 754 S.E.2d at 173 (emphasis added) (citation omitted). "An objective standard is used to determine whether a [motion] has been interposed for an improper purpose, with the burden on the movant to prove such improper purposes." *Id.* at 230, 754 S.E.2d at 173 (citation and internal quotation marks omitted).

First, Defendants argue Plaintiffs' Rule 60 Motion is not factually sufficient because there was no "mutual mistake" in the Consent Order, the parties agreed on how to interpret the Consent Order and the closing mechanics, there was no newly discovered evidence presented by Plaintiffs, and no extraordinary circumstances were alleged. After a thorough review of the Rule 60 Motion, the Record, and the hearing transcripts, we conclude Plaintiffs undertook a reasonable inquiry of the facts and believed their position was well grounded in those facts. Further, the contents of the

Rule 60 Motion are supported by the Record. *See In re Thompson*, 232 N.C. App. at 230, 754 S.E.2d at 173.

Second, Defendants argue Plaintiffs' Rule 60 Motion is not legally sufficient because Plaintiffs could not have reasonably believed a "mutual mistake" existed between the parties. Evidence in the Record, however, supports Plaintiffs' belief that both parties were mistaken about the closing date. First, there is evidence Plaintiffs were diligently working through the month of August. Plaintiffs corresponded with the lender regarding outstanding documents, Plaintiffs had scheduled a closing for 12 August 2021, and based on the email evidence in the Record, Plaintiffs' communications did not evince a concern that closing on 10 September 2021 would be an issue. While Plaintiffs could have been more prompt by not waiting until 8 September 2021 to communicate that closing would not occur until 10 September 2021, it is not apparent that they knew of Defendants' intention to firmly interpret the closing date. Further, because we affirmed the trial court's March Order interpreting the Consent Order as a court-approved real estate contract, which would provide a reasonable time for closing the property purchase, we also hold the Rule 60 Motion was legally sufficient. *See In re Thompson*, 232 N.C. App. 224, 230, 754 S.E.2d 168, 173.

Third, Defendants argue the Rule 60 Motion was interposed for improper purposes of harassing Defendants and needlessly costing them attorneys' fees. We see no evidence of this in the Record nor have Defendants adequately shown improper

purposes. *See In re Thompson*, 232 N.C. App. 224, 230, 754 S.E.2d 168, 173 (the burden is on the moving party to show a Rule 60 motion was filed for improper purposes).

Having found Plaintiffs' Rule 60 Motion was factually sufficient, legally sufficient, and not filed for improper purposes, we therefore conclude the trial court did not err in denying Defendants' Rule 11 Motion. *See Dodd,* 114 N.C. App. at 635, 442 S.E.2d at 365.

## IV. <u>Conclusion</u>

The trial court did not err in interpreting the Consent Order as a court-approved contract, interpreting the Consent Order as allowing for performance in a reasonable amount of time, granting specific performance in favor of Plaintiffs, or denying Defendants' Rule 11 Motion. For the foregoing reasons, we hold the trial court did not err in granting Plaintiffs' Countermotion for Specific Performance.

AFFIRMED.

Judges DILLON and WOOD concur.